J. P. SUNDGREN, *Appellant*, v. JOHN STEVENS, *Appellee.*

No. 17,329.

SYLLABUS BY THE COURT.

1. DAMAGES — *Assault and Battery — Verdict — Inadequate Amount.* In an action for damages for assault and battery the testimony showed that the defendant, without legal justification, struck the plaintiff in the face, causing some injury to the nose and profuse bleeding therefrom, followed for over two months by pain and clogging up of the nose. The defendant admitted the assault and introduced no evidence. The court instructed the jury that if they found that the plaintiff had been unlawfully assaulted and beaten they should allow reasonable compensation. The jury found for the plaintiff and assessed his damages at $1—50 cents for physical pain and 50 cents for insult and indignity. *Held,* that the verdict should be set aside for inadequacy.

2. JURY—*Verdict—Contrary to Evidence.* While the jury are the exclusive judges of the credibility of the witnesses they are not authorized arbitrarily or from partiality or caprice to disregard uncontradicted and unimpeached testimony or facts shown beyond question both by testimony and by admission.

Appeal from Saline district court. Opinion filed December 9, 1911. Reversed.

*Z. C. Milliken,* for the appellant.

*C. W. Burch,* and *B. I. Litowich,* for the appellee.

The opinion of the court was delivered by

WEST, J.: Plaintiff Sundgren went to see his neighbor Stevens about helping fix a fence between their farms, which adjoined. Stevens and his son were in

Sundgren v. Stevens.

the feed lot. It was just at dusk. Stevens claimed that plaintiff had told him he would not stand by some arrangement he had made, to which plaintiff replied that he did not do that, that he never backed out, to which Stevens replied that plaintiff was calling him a liar (which plaintiff denied), and jerked a whip from a buggy, but did not strike. Later in the conversation plaintiff again said that he always stood by his arrangements, when Stevens struck him in the face, and he fell against a spring wagon or buggy. Plaintiff sued for damages for assault and battery, and the defendant answered, denying the allegations of the petition, but admitting that he struck the plaintiff at the time alleged and claimed that plaintiff had come upon his premises with intention to provoke a quarrel, and was an intruder and trespasser and came for the purpose of disturbing his peace, and had made repeated statements that defendant was falsifying facts. The defendant was present at the trial, but did not testify or offer any evidence. The testimony of plaintiff was that the defendant struck him on the nose and eye, bruising and breaking his nose and cracking his lip; that his lip was split, and he fell against a spring wagon or buggy; that he was not angry, but spoke kindly, and did not intend to fight or go for that purpose; that as he rode away the defendant told him if he said anything more about the matter he would knock him off his horse and "beat the stuffin' out of him"; that after the blow the defendant asked him to go into the house and wash, which he refused to do, the defendant stating that he was sorry he had hit him, but that plaintiff had aggravated him until he did it; that it was a straight blow, as hard as the defendant could strike; that plaintiff went home, and then to the justice of the peace and made complaint; that his nose bled profusely; that he had suffered a great deal of pain and clogging up of the nose, and had pain in his nose for over two months, and at the time of the trial, some ten months after-

wards, it still pained him occasionally; that after seeing the justice plaintiff came by the store, where there were three or four men and where there was some conversation about the affair; that he did not wash the blood from his nose until he finally returned after his visit to the justice and stop at the store. The doctor, who was consulted two days later, testified that the nasal bone was broken; that there was no displacement; that he did not remember any injury to the lip, but his impression was that the eyes were still discolored; that he noticed no bruises on the forehead. What he "saw was with his hands"; that he examined the nose and found crepitation of the bone, thus detecting the fracture; that no charge was made and no treatment given; that he told plaintiff to be careful about blowing his nose, and not to get any displacement, and it would be all right; that the nasal bones were separated but not displaced. The wife testified that when plaintiff came home from his call on the justice he was covered with blood, his nose still running with blood; that there was a bruise over the eye; that his eye was turned blue on both sides of his nose, and his nose was swollen up for a day or so "about three times as big," and was bleeding every time he would wipe it for three days; he seemed kind of weak. Another witness testified that he saw the plaintiff in the evening at the store; that his face was bloody, that his clothes were covered with blood, and one of his eyes looked as though it were swollen some; that his lip was bleeding and appeared to be cut. The defendant was fined five dollars by the justice, and ninety-five cents costs, and he directed the justice to notify the plaintiff that if he ever came upon the place he would beat the life out of him. The court instructed the jury that provocative words or acts, if any, constituted no justification for an assault, and could only be considered, if at all, in mitigation of punitive damages, and that if they found that the defendant had unlawfully assaulted and beaten the plain-

Sundgren v. Stevens.

tiff they should allow reasonable compensation, not exceeding $500. The jury returned a verdict for one dollar—fifty cents for physical pain and fifty cents for insult and indignity. The plaintiff appeals, and claims that a new trial should be granted for the reason that the jury violated the instructions and awarded damages palpably inadequate.

It is suggested by the defendant that the plaintiff not only took pains to exhibit his alleged wounds and his bloody condition, but that he and his wife so exaggerated their testimony that they were disbelieved by the jury; that the question of damages was one for the jury and could not be measured by any fixed standard, and that before a new trial could be granted it should appear that the jury were misled by mistake or influenced by prejudice or passion. The case of *Pritchard v. Hewitt,* 91 Mo. 547, 4 S. W. 437, is cited as an example of numerous cases holding that in actions of this kind inadequacy of damages is not a ground for a new trial, unless the verdict appears to have been the result of passion, prejudice or partiality. In this decision by the supreme court of Missouri is found a quotation (p. 550) from page 451 of volume 1 of the second edition of Graham & Waterman on New Trials, to the effect that the reason for refusing to disturb verdicts in cases of this kind is that there is no scale by which the damages are to be graduated with certainty; that the law presumes the jury to have done their duty, and until the result of their deliberation appears in a form calculated to shock the understanding and impress no dubious conviction of their prejudice and passion their verdicts will not be disturbed.

The plaintiff insists that, the assault being admitted, and the court having instructed to award compensation, a verdict for nominal damages was a disobedience of the instruction and contrary to the evidence, and cites numerous authorities in support of his contention.

Whatever may have been the manner or appearance

of the plaintiff and his wife upon the stand, it was shown beyond dispute, in addition to the admission of defendant, that without legal justification he struck plaintiff in the face, the effect of which at least was to separate the nasal bones and to cause profuse bleeding of the nose; to a charge of assault he pleaded guilty. Whether the plaintiff was mistaken in his statement that the blow was straight from the shoulder, or whether he was mistaken in stating that the one blow injured his nose, split his lip and bruised his forehead, it does appear that his lip was injured and that his eye was discolored. It was held in *Lonergan v. Small*, 81 Kan. 48, 105 Pac. 27:

"An assault upon another is an intentional infringement upon the absolute right of personal security, for which the law gives a right of action against the wrongdoer, in which damages for mental suffering which is the proximate and natural result of such wrong may be awarded, although there was no battery or bodily injury inflicted." (Syl. ¶ 2.)

Whenever it is manifest that the jury have found against the clear weight of the evidence, and that the party asking for a new trial has not in all probability had a fair trial nor received substantial justice, it is an imperative duty to set aside the verdict and grant a new trial. (*Coal and Mining Co. v. Stoop*, 56 Kan. 426, 43 Pac. 766.) In *Noftzger v. Moffett*, 63 Kan. 354, 65 Pac. 670, the evidence showed that the attorney suing for compensation was entitled to a substantial recovery, and it was held that the court erred in holding that he was not entitled to recover anything. In *Thompson v. Burtis*, 65 Kan. 674, 70 Pac. 603, evidence was offered as to the extent and value of the legal services for which compensation was sought, which was not contradicted or impeached, and which showed a right to recover a substantial amount, if anything. The jury awarded the nominal sum of one dollar, and this was held to involve an inconsistency and not to be sustained

by the testimony. In the opinion Chief Justice Johnston said:

"The jury, it is true, was not obliged to accept as conclusive the opinions of experts as to the value of legal services, but they could not overlook competent testimony that was unimpeached. . . . In some way the jury were warped from the direct line of duty, and, instead of awarding a substantial sum, gave the mere nominal amount of one dollar. This was error." (pp. 675, 676.)

In *Harrod v. Latham*, 77 Kan. 466, 95 Pac. 11, a verdict was directed for the plaintiff. Evidence of certain facts was uncontradicted, but it was there said that the facts sought to be proven by such evidence were in issue.

"When, therefore, there is no dispute as to the ultimate facts upon which the right of recovery depends, the court may direct a verdict." (p. 474.)

It was, however, further said that "whenever the testimony must be weighed and conclusions deduced therefrom the jury alone must make the deductions in the first instance" (p. 475), and the directing of the verdict was held to be erroneous. In *Saindon v. Morrell*, 78 Kan. 53, 95 Pac. 1056, it was held that a judgment would not be reversed for the reason only that the evidence "may seem to justify" (syl.) the recovery of a larger sum. That was an action for damages for assault and battery in which only fifteen dollars was awarded. It was held that if as a question of law all the undisputed testimony of the witnesses was to be taken as true the plaintiff was entitled to a larger verdict, but that it was the province of the jury to determine in the first instance the credibility of the witnesses and what their testimony proved, though they were not contradicted, and that the judgment would not be reversed because the evidence would seem to justify a larger verdict. But no such admission and no such instruction as those now under consideration were dis-

cussed in the opinion. In *Heineken v. Benton Township*, 84 Kan. 881, 115 Pac. 592, it was held that the verdict could not be set aside for inadequacy, not being for nominal damages, not inconsistent with the facts and not showing passion or prejudice.

In *Miller v. Miller*, 81 Kan. 397, 105 Pac. 544, an action to recover the value of personal services, it was not disputed that services of substantial value were rendered, but it was claimed that they were to be gratuitous, which was disputed. The jury found for plaintiff, assessing his damages as one dollar. The verdict was set aside on the ground that the recovery was too small. In the opinion it was said:

"By finding for the plaintiff the jury determined the issue in his favor, and it only remained to award reasonable compensation. This is not a case for nominal damages, such as are allowed for the breach of a legal duty which has caused no material loss. Such an award is permissible in a proper case to vindicate a right where damages are possible but have not been suffered." (p. 398.)

In *Bressler v. McVey*, 82 Kan. 341, 108 Pac. 97, there was no dispute that the plaintiff was entitled to the amount claimed if entitled to recovery at all. The jury found in his favor, awarding one-half the amount claimed. It was held that such verdict should be set aside at the instance of either party. In the opinion Mr. Justice Mason said:

"The jury were called upon to determine which condition existed, but instead of doing so they assumed to settle the controversy by allowing one-half of the claim and disallowing the other half, no doubt with the idea that 'splitting the difference' was a fair method of compromising the dispute. But in this they mistook their function." (p. 343.)

In *Jackson v. Humboldt*, 84 Kan. 445, 113 Pac. 1047, an action to recover for assault and battery, the evidence tended to show that the plaintiff had been grievously wounded, his face disfigured, his sight perma-

nently impaired, and that he had suffered great pain, lost considerable time and incurred material expense. The jury found in his favor, assessing his damages as one dollar. This was held to be erroneous and that a new trial should have been ordered.

The fact that the provision of the former code forbidding a new trial for smallness of damages was omitted from the present civil code is an indication that the legislature deemed inadequacy a proper ground for a new trial, it having been said in *Railway Co. v. O'Neill*, 68 Kan. 252, 74 Pac. 1105, that:

"The rule may be hard, and in some cases may be productive of injustice, but that is a consideration to be addressed to the lawmakers and not to the law interpreters." (p. 256.)

In *Miller v. D. L. & W. R. R. Co.*, 58 N. J. Law, 428, 33 Atl. 950, a woman sued for damages caused by the company's neglect to provide a bench for her to alight on. There was considerable evidence showing the serious character of the hurt and that it was painful and chronic and there was no evidence to the contrary. The jury rendered a verdict for 6 cents, and the supreme court of New Jersey said:

"This result of the trial in this case can not be explained on any ground that will harmonize it with justice or with common sense." (p. 429.)

In speaking of a verdict resulting from passion, prejudice or partiality, or a mistake or failure to take into consideration the proper elements of damage, it was said in *McDonald v. Walter*, 40 N. Y. 551:

"But, when the case does plainly show such a result, justice as plainly forbids that the plaintiff should be denied what is his due as that the defendant should pay what he ought not to be charged." (p. 554.)

In *Tathwell v. City of Cedar Rapids*, 122 Iowa, 50, 97 N. W. 96, the supreme court of Iowa held that the unimpeached testimony of the plaintiff having shown

11—86 KAN.

him entitled to a much greater sum than that awarded by the jury the trial court rightfully set the verdict aside because inadequate under the evidence. In *Leavitt v. Dow*, 105 Maine, 50, 72 Atl. 735, it was said:

"And it is now held both in England and in courts of the United States that no reason can be given for setting aside verdicts because of excessive damages which does not apply to setting them aside for inadequacy of damages." (p. 53.)

It was held by the supreme court of New York in *Lewis v. New York City Ry. Co.*, 99 N. Y. Supp. 462:

"The positive testimony of an unimpeached, uncontradicted witness can not be disregarded by a court or a jury arbitrarily or capriciously. . . . The rights of the people would have no safeguard, and the courts of justice would afford no forum for the redress of wrongs, if the unimpeached and uncontradicted testimony of a witness can be overthrown without reason."

In *Newton v. Pope*, (N. Y. Supr. Ct. 1823) 1 Cow. 109, it was said:

"But there is no difficulty in saying, that where (as in this case) the witness is unimpeached; the facts sworn to by him, uncontradicted, either directly or indirectly, by other witnesses; and there is no intrinsic improbability in the relation given by him; neither a court nor jury can, in the exercise of a sound discretion, disregard his testimony. It is no less the duty of a court than of a jury, to decide according to evidence. But it is mockery to talk of evidence, if it is discretionary with the tribunal, to which it is addressed, to disregard it, upon the vague suggestion, unsupported by proof, of the bias of the witness." (p. 110.)

In *Lionberger v. Pohlman*, 16 Mo. App. 392, it was said by Judge Thompson:

"But, after mature deliberation, we are of opinion that the correct rule is, that, where the testimony offered in support of the allegations of the party who sustains the burden of proof is, if believed, sufficient to make out his case, and is clear, consistent with itself, delivered by an unimpeached witness, and no cir-

Sundgren. v. Stevens.

cumstance is developed tending to cast suspicion upon it, and no substantial countervailing evidence is offered by the other party, if the jury, nevertheless, disregard it, and return a verdict against it, it will be the duty of the trial court on a motion for a new trial, and of an appellate court on appeal or error, to set it aside as being the result of a manifest mistake." (p. 398.)

The supreme court of Wisconsin in *Engmann v. The Estate of John Immel, Deceased,* 59 Wis. 249, 18 N. W. 182, said:

"The jury might as well, in their arbitrary and sovereign pleasure, render a verdict without evidence as against evidence." (p. 252.)

Lord Stowell in *Elwes v. Elwes,* 4 Eng. Eccl. 401, thus states the matter:

"If witnesses come unimpeached in point of general integrity, if they depose with characters of fairness in their particular narrations, the facts must be received, or there is an end of all judicial inquiry." (p. 409.)

(See, also, *Hughey v. Sullivan,* 80 Fed. 72; *Barrette v. Carr and Carr,* 75 Vt. 425, 56 Atl. 93; *Ford v. Minneapolis Street Ry. Co.,* 98 Minn. 96, 107 N. W. 817, 8 A. & E. Ann. Cas. 903, and note; *Brown v. Petersen,* 25 App. D. C. 359, 4 A. & E. Ann. Cas. 980.)

The rule, founded upon justice and reason and supported by the weight of authority, is that in cases of this kind if the verdict is so inadequate as clearly to indicate partiality, passion or prejudice on the part of the jury or failure to heed the evidence and facts actually shown, it should be set aside; that while the jury are the exclusive judges in the first instance of the weight of the evidence and the credibility of the witnesses, this means that they are in fact judges thereof acting with reason and fairness and not from partiality or caprice or arbitrarily.

With the facts before them that beyond any question of doubt the assault was made without legal justification, that it was of sufficient violence to cause profuse

bleeding at the nose and a separation of the nasal bones, and with the direction by the court to return such a verdict as would amount to compensation, the conclusion seems inevitable that the jury, either from partiality or caprice or from failure to obey the instruction of the court, returned a verdict not for compensatory but for nominal damages. Men are to be commended for seeking legal redress in court instead of taking vengeance into their own hands. Common sense and the common instincts of humanity revolt at the notion that for the physical pain and humiliation caused by the assault $1—50 cents for each—could be otherwise than farcical.

The judgment of the trial court is reversed and the cause remanded with directions to grant a new trial.

BURCH, J. (dissenting): There is nothing about which the plaintiff was more positive than that all his claimed injuries proceeded from one straight blow. He described it in words several times, always the same, and he described it, as the record shows, by an indicating gesture. If, however, that were true the claimed results were incredible. The opinion of the court recognizes this difficulty and recognizes the necessity of eliminating some portions of the plaintiff's story. So the opinion picks out what is certainly true and makes the paliative suggestion as to a mistake on the part of the plaintiff as to one or the other of two incompatible sets of statements. The jury did precisely the same kind of work in the exercise of what has heretofore been believed to be its proper function, and the law in such cases is clearly as stated by Mr. Justice Mason.

What about damages for humiliation? The evidence is open to the interpretation that the plaintiff repeated and repeated statements which the defendant regarded as an impeachment of his veracity and so aggravated the defendant into striking him. The defendant was immediately sorry for his act and wanted to do what he

Sundgren v. Stevens.

could to repair it. The plaintiff had a nose-bleed, and seemed to regard it as a very valuable asset. He would not wash at the defendant's house or permit the defendant to send some water out to him for the purpose, and went home. He would not wash himself there, but carried his ensanguined front to the home of a neighbor living north of him, where he inquired for the justice of the peace. After making this exhibition of his humiliation he went to the justice of the peace. The plaintiff lives a mile and a half north of Kipp and the justice lives west and north of Kipp. After initiating his criminal proceedings the plaintiff went to Kipp. He said he had no business there, but he went to the store and paraded his humiliation there, meantime having wiped the blood over his face. Then he went home. In view of this and other peculiar testimony the jury doubtless concluded that the plaintiff was simply trying to lay the foundation for a big lawsuit and that substantial damages for genuine humiliation of feelings were not established.

Then what about personal injuries? The defendant was present in court and the jury could estimate his physical strength. The plaintiff said the defendant struck him a straight blow as hard as he could. Yet the plaintiff was not knocked down. Despite his story of cut lip, contused forehead, black eyes and broken nose, when he went to the doctor two days afterward visible traces of injury had substantially if not entirely disappeared. The doctor's only positive testimony was this:

"Q. Do you recall what you saw? A. Yes, sir.
"Q. What did you see? A. What I saw I saw with my hands."

By taking hold of the nose a crepitation was perceptible, indicating a separation of the nasal cartilage from the cheek bone. The cartilage was not cracked and there was no displacement, no treatment was necessary, none was given, and no charge was made. The

doctor has nothing whatever to say of exhibited pain or discomfort of any kind, and the defendant lost no time except it be in getting his lawsuits under way. The result is the plaintiff was discredited by his doctor as well as in other ways, and upon all the evidence the jury concluded that the result of the blow was really inconsequential and not worthy of more than nominal damages. Because the jury, after seeing and hearing all the witnesses, inferred falsification where the court infers mistake, threw out what it believed to be the product of falsification and exercised its judgment in a matter respecting which even the opinion of the court vouchsafes no standard of measurement, I am not willing to brand the jury as arbitrary, capricious, partial, etc., nor willing to convict the trial judge, who, with advantages which this court does not possess, approved the verdict, of sanctioning a farce against which common sense revolts.

In the case of *Heineken v. Benton Township*, 84 Kan. 881, 115 Pac. 592, almost the entire amount of the plaintiff's claim of $4500 was for physical injuries, impaired health, doctor's bills and the cost of medicine. He told how he, together with his team and buggy, went over an embankment, and how his head was driven into the sand in the bottom of the creek. He claimed that his health failed, that he was under the doctor's care for a long time, and that he spent much money in an effort to restore his health. Nobody saw the remarkable occurrence upon which he based his claim for these damages, and the jury, disbelieving his story respecting it, allowed him nothing. The jury did allow him $45 for injury to his buggy and $5 for injury to his harness. Had these items not been included the case would be exactly parallel in principle to this one.

MASON, J. (dissenting) : The petition alleged that the defendant struck the plaintiff and thereby inflicted

Grocer Co. v. Kinkaid.

certain specified injuries. The answer contained a general denial, admitting the striking, thereby, as it seems to me, denying that the plaintiff had received any substantial injury, and placing upon him the burden of proof in that regard. If he had offered no evidence he would have been entitled to a verdict for nominal damages for the invasion of his legal right, but to nothing more. The jury obviously disbelieved his entire evidence as to the extent of his injury and rendered the only verdict conformable with that belief. The trial court approved the verdict. The rule is that this court will not set aside a verdict merely because it is in conflict with oral testimony which no witness contradicted. The decision seems to proceed upon the theory that the facts were as testified to by the plaintiff's witnesses, and that the defendant had admitted as much. I think the defendant admitted nothing beyond a technical assault, and that it was the province of the jury to say whether anything more was committed.