No. 25,092.

## J. R. RUSSELL, *Appellant,* v. J. R. NEWMAN and C. F. YOUNG, *Appellees.*

### SYLLABUS BY THE COURT.

MALPRACTICE—*Negligence—Gauze Sponge Left Within Incision—Verdict Nominal Damages—New Trial Awarded.* In an action for malpractice, where it is established that surgeons inadvertently left a gauze sponge within the incision after the removal of a kidney, a verdict in favor of the plaintiff awarding him only nominal damages is held to require a new trial, notwithstanding medical testimony that no injury resulted to the patient.

Appeal from Linn district court; EDWARD C. GATES, judge. Opinion filed June 7, 1924. Reversed.

*John A. Hall,* of Pleasanton, and *John C. Cannon,* of Fort Scott, for the appellant.

*James G. Sheppard,* and *Charles F. Newman,* both of Fort Scott, for the appellees.

The opinion of the court was delivered by

MASON, J.: J. R. Russell sued J. R. Newman and C. F. Young, physicians and surgeons, for malpractice, alleging that after removing his right kidney on May 30, 1919, they had negligently left within the incision a surgical gauze sponge four or five inches long and about an inch and a half in diameter, which remained there without discovery until August 7, 1919. A verdict was rendered in favor of the plaintiff, awarding him, however, only one dollar. He appeals, relying upon the proposition that inasmuch as the verdict necessarily amounted to a finding of negligence, the failure to allow him substantial damages showed passion and prejudice on the part of the jury and was contrary to the evidence.

Where a wrong is found to have been committed which obviously resulted in substantial injury, a verdict for merely nominal damages is not allowed to stand. This rule has been applied in an action for assault and battery (*Sundgren v. Stevens,* 86 Kan. 154, 119 Pac. 322), and in one for the alienation of affections (*Bracken v. Champlin,* 114 Kan. 882, 220 Pac. 1027).

Here the jury obviously concluded that the sponge was inadvertently and negligently left within the incision, but that no actual injury resulted from it. One of the defendants testified that he did not intend that any sponge should remain in the incision after June

4; that he would not have left one in if he had known it was there; that all ought to have been taken out then; that if he had known it was there he would certainly have taken it out. There were conflicts in the evidence. The plaintiff testified that when he left the hospital on June 18 he was told he was ready to go home; that neither of the defendants said a word to him about returning, and that he was given instructions for his own treatment. According to the defendants' evidence, when he left on June 18 he was told to return within a week or ten days for examination, and promised that he would, but failed to do so. This dispute must be regarded as having been settled in favor of the defendants, so that any consequences of the incision going without examination after June 18 may be attributed to his own failure to follow instructions. The plaintiff's evidence affirmed and the defendants' denied that when the sponge was removed it had a foul odor. The plaintiff described his condition and feelings before and after the operation and before and after the removal of the sponge, telling of various pains and symptoms which he attributed to its presence. He introduced medical evidence tending to support his contention in that regard, but against this the defendants produced the testimony of themselves and of other doctors that the leaving of the sponge within the incision was not likely to cause any injurious results, and that whatever unfavorable conditions afterwards manifested themselves were not attributable to its presence—on the contrary, that it was of actual benefit in promoting the healing process and hastening a recovery from the effects of the operation. Extracts from this testimony follow:

"We did not open the abdominal cavity. . . . We left an opening in the incision big enough to stick in four or five homostats and four pieces of gauze. . . . This gauze remaining in this incision, I am sure, did not injure the patient. . . . The leaving of the sponge in the incision did not damage but assisted in healing the wound. . . . We left the wound open for the purpose of drainage. . . . The wound begins to heal at the bottom, but if you don't put something in there, it won't, so we put something in there for drainage. Sometimes we use gauze and sometimes rubber tubes, and sometimes rubber strips, but almost always gauze. As long as the wound is open the gauze will not injure the patient. . . . It always will [work out] if your wound is open. . . . The keeping of this wound open after the operation tended to drain the poison out of the wound. · The system couldn't and wouldn't absorb the poison. It was not necessary that the sponge be anchored to the outside. I have packed and repacked sponges in wounds for a longer period than sixty-nine days. If the sponge is sterilized it don't hurt anything. You couldn't expect the patient to get well in a couple of months. If he gets

well in a year he does very well. In my opinion, knowing how long it takes kidney wounds to heal up, I think this really hastened the healing. It didn't hurt him any, not at all. . . . It made more granulations and healed that much faster and the formation of this greater amount of pus was not a drain on the system."

"The pus was still discharging when I took the sponge out on the 8th of August. It had the ordinary smell. There was no fecal odor about it at all. There could have been no such odor. There was no place for it to come from. We expect an incision like that to discharge pus for about three months as a general rule. We have known them to do so as long as a year. The result of leaving gauze in there is that the wound probably healed faster. It helped to drain."

"No injury could have come to the patient from this gauze. . . . The fact that this gauze stayed in the wound from May 30 to August 7 would do no harm in this case. The existence of foreign bodies would not necessarily cause any additional burden on the other kidney, because there would be no absorption from the foreign body on account of the granulated wall built up around it. The increased amount of granulation was protection and healing."

"This sponge could not have hurt the patient. The injury to his system came before the operation, not afterwards."

The rule that the testimony of witnesses skilled in medicine and surgery is necessary to determine whether specified acts constitute malpractice is subject to some qualification. For instance, it is said: "Probably the most common instance of malpractice which is brought into the courts arises out of surgical cases where the physician or attendant has left a sponge in the wound after the incision has been closed. That this is plainly negligence there is no doubt at all, and it matters not at all that many physicians testify that the best of surgeons sometimes leave a sponge or some other foreign substance in the bodies of their patients, for this is testimony merely to the effect that almost everyone is at times negligent." (21 R. C. L. 388.) In a recent case having some features in common with the present one the court said: "Jurors of ordinary intelligence, sense and judgment, although not skilled in medical science, are capable of reaching a conclusion without the aid of expert testimony as to whether it is good surgery to permit a wound to heal superficially with nearly half a yard of gauze deeply imbedded in the flesh, and likewise are capable of determining whether or not injurious consequences of some character would probably result. The exact nature and extent of the evil consequences resulting therefrom, of course, laymen would not be competent to determine without the aid of medical science." (*Walker Hospital v. Pulley*, 74 Ind. App. 659, 664.)

Russell v. Newman.

The verdict rendered was an inconsistent one. If no injury was done the plaintiff there was no justification for awarding even nominal damages against the defendants. They ought not to be penalized for doing the proper thing, even though they did it unintentionally. Notwithstanding the testimony of physicians to the contrary, the court is of the opinion that if, as the jury must be deemed to have found, the defendants negligently left the sponge in the incision where it remained undiscovered from May 30 to August 7, substantial injury to the patient must have resulted, and therefore a verdict for merely nominal damages should not be allowed to stand.

The judgment is reversed and a new trial ordered.

MASON, J. (dissenting): I do not think testimony of physicians that no substantial injury resulted from the presence of a surgical sponge in an unclosed incision is so contrary to the laws of nature that an appellate court may set aside a judgment based upon it on the ground that it cannot possibly be true. (See Note, 8 A. L. R. 796; Note, 21 A. L. R. 141; § 198 of Evidence, 10 R. C. L. 1008, and supplements.)

HARVEY, J. (dissenting): The verdict must be construed as a finding that defendants were negligent in leaving the gauze sponge in the incision, but that this did not result in injury to the plaintiff. In malpractice cases, as in negligence cases generally, the rule is that damages cannot be recovered for negligence which does not result in injury. On the point whether injury resulted from the negligence in this case there was much conflicting evidence. The jury considered this conflicting evidence and found by their verdict that there was no injury resulting to plaintiff from leaving the gauze sponge in the incision for about seventy days. This finding and verdict was approved by the trial court, whose duty it was to weigh the evidence and to satisfy his own mind that the verdict was just. In the absence of any suggestion to the contrary it must be assumed that the court performed that duty. This court cannot weigh conflicting evidence. Unless there was no evidence to sustain the verdict it must stand. That cannot be said in this case. There was abundant evidence that the leaving of the gauze sponge in the wound did not result in injury to plaintiff.