No. 28,498.

EDWARD JAMES McMILLEN, *Appellant*, v. FRANK FONCANNON, *Appellee.*

(274 Pac. 237.)

Opinion filed February 9, 1929.

*W. H. Carpenter,* of Marion, *Humbert Riddle* and *Carl Judd,* both of Emporia, for the appellant; *C. C. McCullough,* of Brazil, Ind., of counsel.

*W. C. Harris, Owen S. Samuel,* both of Emporia, *Ralph T. O'Neil* and *J. D. M. Hamilton,* both of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for damages for malpractice. A demurrer to plaintiff's evidence was sustained. He filed a motion for a new trial, which was overruled, and judgment was rendered for defendant. Plaintiff has appealed.

Plaintiff's evidence is, in substance, as follows: About six o'clock on the evening of February 2, 1925, plaintiff, a workman, sustained an injury in which his right arm was broken below the elbow. Defendant, a physician and surgeon, was called to treat the injury. He took plaintiff to his office, made X-ray pictures of the injured arm, examined it before a fluoroscope and by feeling of it and manipulating it, bandaged the arm in splints, told plaintiff one of the bones was broken, that it was a bad break close to the elbow, and said:

"If I can just hold it until it begins to knit, it will be a good arm; otherwise if I am unable to hold it, I will have to take you to the hospital—it's a hospital job. If I can just hold it it will be all right."

He told plaintiff to come back the next day. Plaintiff went to his office the next afternoon. Defendant again examined the arm before the fluoroscope and bandaged it in splints. Plaintiff complained of severe pain in his elbow and shoulder. These were examined by defendant, who stated there was nothing wrong there. Repeatedly throughout the treatment plaintiff complained of severe

pain in the elbow, and defendant each time informed him there was nothing wrong with it. At defendant's direction plaintiff visited him at his office each day for perhaps two weeks, and after that every second or third day until March 13. A part of this time the arm was bandaged in splints and later in a plaster of Paris cast. Defendant took no X-ray pictures after the day of the injury and did not examine the arm before a fluoroscope after the second visit. On March 13 defendant removed the bandage and told plaintiff to use the arm. At that time the arm was about two inches shorter than the other arm, and there was quite a lump on the arm near the break. Defendant said that would all disappear and would not be noticed. "You would hardly notice it yourself if you didn't know it." He also stated that both bones had been broken. He discharged plaintiff as a patient at that time. On March 17 plaintiff called at defendant's office, but defendant was not in, and plaintiff did not call again. Plaintiff did some light work; he could lift straight up with this arm, but if he held it horizontally it fell with its own weight. Plaintiff had sustained no later injury to his arm. At the time of the trial it was in substantially the same condition that it was in when defendant discharged him as a patient. On direct examination the court sustained an objection to a question framed to elicit this, but from answers to other questions, and answers to questions on cross-examination, this was before the court. On July 10 plaintiff had X-ray pictures made of his arm by Sister Beatrice, but on objection by defendant these were excluded from the evidence. Objections by defendant were sustained to several questions propounded to plaintiff on what appeared to be material points. In preparation for the trial of the case in May, 1927, the court appointed two physicians to examine plaintiff's arm. One of these, Doctor Lawrence, was called as a witness by plaintiff. He testified that he was a physician and surgeon, and under an appointment of the court had made several X-ray pictures of plaintiff's injured arm, and had also made an examination. He identified the X-ray pictures taken by him, but on objection by defendant they were excluded from the evidence. He also testified that he had made an examination of the arm at the time he took the pictures, but on being asked to state what that examination was defendant's objection was sustained. A hypothetical question was then propounded to him based on the evidence as plaintiff understood it to be. Defendant's objection to this was sustained.

Appellant complains of the rulings of the court excluding the evidence as above stated. None of this evidence was offered by affidavit, deposition or testimony of the witnesses on the hearing of the motion for a new trial, as required by R. S. 60-3004, but the rule of this statute, which requires excluded evidence to be offered on the hearing of the motion for a new trial, does not apply to documentary evidence. (*Winkler v. Korzuszkiewicz,* 118 Kan. 470, 475, 235 Pac. 1054, and cases there cited.) The rule, therefore, does not apply to the X-ray pictures offered. These pictures clearly disclose that there was a dislocation of the radius at the elbow. They also disclose that the ends of the bone at the break in the ulna were not in apposition, but overlapped, and that the bone had not knit at the place of this break, but separated when the arm was placed in certain positions. These X-ray pictures were material evidence in the case. It was error to exclude them.

The chief question before us is whether there was enough evidence to go to the jury. This question must be answered in the affirmative. The evidence quite clearly shows that serious dislocation of the radius bone at the elbow was never set or treated by defendant. And the evidence almost as clearly shows that defendant discharged plaintiff as a patient at a time when the broken ulna had not knit, and the broken ends were overlapped and separated.

The rules respecting the liability of physicians in malpractice cases have been frequently stated. Many of them are collected in *James v. Grigsby,* 114 Kan. 627, 631, 632, 220 Pac. 267, where the earlier Kansas cases by this court are cited. Later cases are: *Saylor v. Brady,* 114 Kan. 764, 220 Pac. 1047; *Hershey v. Peake,* 115 Kan. 562, 223 Pac. 1113; *Russell v. Newman,* 116 Kan. 268, 226 Pac. 752; *Parr v. Young,* 121 Kan. 47, 246 Pac. 181; *Blex v. Flack,* 121 Kan. 431, 247 Pac. 640; *Updegraff v. Gage-Hall Clinic,* 125 Kan. 518, 264 Pac. 1078.

Appellee argues that the evidence on behalf of plaintiff, considered as favorably to him as can reasonably be done, shows only a bad result, and that defendant is not liable where nothing more is shown. It is true that a bad result, standing alone, does not establish liability. But it is also true, as in all cases predicated on negligence, that there can be no recovery unless there is a bad result, or injurious consequences. So, when plaintiff showed a bad result he established at least a material part of his case. And a result may be so bad as to be, in and of itself, evidence of negligence

(*George v. Shannon*, 92 Kan. 801, 807, 142 Pac. 967; *Shockley v. Tucker*, 127 Ia. 456; *Evans v. Clapp*, 231 S. W. 79, 86 [Mo. App.]; *Loveland v. Nelson*, 235 Mich. 623) sufficient to go to the jury if unexplained, or not contradicted.

Appellee points out that there was no medical evidence as to what was the proper treatment of plaintiff's arm, and that no witness schooled in the science of medicine testified that defendant was negligent in his treatment of plaintiff. The general rule pertaining to the necessity of medical evidence of negligence is stated in *James v. Grigsby*, supra, as follows:

"What is the proper treatment to be used in a particular case is a medical question to be testified to by physicians as expert witnesses; laymen, even jurors and courts, are not permitted to say what is the proper treatment for a disease or how a specific surgical operation should be handled (citing cases)." (p. 632.)

This rule can be applied, of course, only to those matters clearly within the domain of medical science. It is not a judicial determination that the members of the medical profession have a monopoly on common sense. Matters within the common knowledge of mankind may be testified to by anyone familiar with the facts. In *Pettigrew v. Lewis*, 46 Kan. 78, 81, it was said: "Cases may arise where there is such gross negligence and want of skill in performing an operation as to dispense with the testimony of professional witnesses." See cases last above cited; also, *Wharton v. Warner*, 75 Wash. 470; *Walker Hospital v. Pulley*, 74 Ind. App. 659; *Eichholz v. Poe*, 217 S. W. 282 (Mo.); 21 R. C. L. 388.

That it was negligent not to set or treat a badly dislocated elbow need not be established by a medical witness; it is a matter of common knowledge that such an injury needs treatment. The evidence here is that it received none. Neither does it require medical evidence to justify a jury in finding negligence in dismissing the patient as practically well when the forearm was about two inches shorter than normal and when the arm was held in a horizontal position the end would drop with its own weight. Any layman would know that condition could not exist unless the ends of the bone where it was broken were overlapped (or a section of the bone had been actually removed from the arm) and had not grown together to make it rigid.

The judgment of the court below is reversed with directions to grant a new trial.