No. 29,721.

HESTER L. CONVERSE, *Appellant*, v. THE WICHITA GAS COMPANY, *Appellee*.

(295 Pac. 635.)

Opinion filed February 7, 1931.

*D. O. Potts, Thomas C. Wilson, Henry Lampl, Dallas M. Potts* and *Rupert Teall,* all of Wichita, for the appellant.

*A. M. Ebright, Allen B. Burch* and *J. B. Patterson,* all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was one for damages suffered when plaintiff fell into a ditch being dug by defendant, and broke her hip. Verdict and judgment were for plaintiff in the amount of $1,250. Plaintiff asked for a new trial as to amount of damages alone. This was refused. She appeals.

Plaintiff was a widow and lived on the east side of Erie street, in Wichita, with her daughter. Her neighbors, the Whiteheads, lived north on Erie street, with one house between. There is no sidewalk along the east side of this street, but there is a parking about twelve or fifteen feet wide. Erie street is paved and guttered. There is a driveway leading into Erie street from the Converse home and there is also one leading from the Whitehead home to the street. On the day in question the Wichita Gas Company had been digging a ditch in the parking on the east side of Erie street about two feet east of the curb. The ditch was being dug with a machine. It was about twelve inches wide and about thirty-two inches deep. A gang of about seventeen men had been employed. There was evidence that plaintiff had been out in the yard talking to the men that day while they were at work. When the ditch had reached the driveways, as mentioned heretofore, it had not been dug across them, but a hole had been bored underneath them, leaving a pathway across the ditch. Dirt had been thrown out over the parking on each side, but more on the east side than on the west. When night came on the day in question red lanterns had been put out along this ditch, being set along the top of the dirt. There was testimony that there were two lanterns put on each side of the Whitehead driveway and one on the Converse driveway, besides a number of others up and down the street. On the night of the injury to Mrs. Converse, at about 7:30, she left her own yard by way of her driveway and walked north on the pavement until she came to the Whitehead driveway. Here she turned in and started to enter the Whitehead place over their driveway. Noticing some water there she turned north and stepped off into the ditch, breaking her leg up close to her hip joint. Her story is that she had quite a struggle getting out of the ditch, finally rolling out into the street and starting to crawl home, when a neighbor man came along and picked her up. Her leg was put into a plaster cast and she was confined to her bed in the hospital for about sixty-three days and

at her home for some eight or ten weeks. At the time of the trial it was apparent that her injured leg would always be a little bit shorter than the other, thus causing her to limp. The evidence was that she had been a very active woman, in doing her housework and taking care of an extensive garden and canning several hundred quarts of fruit each summer. She had been of an unusually happy and pleasant disposition, not at all nervous and had a great zest for life, while now she is unable to work but little, is highly nervous, cannot sleep and has lost the peaceful, happy, contented look which had characterized her before her injury. The jury answered special questions, indicating that the negligence of defendant consisted of not properly guarding the north side of the Whitehead driveway, and that the plaintiff was not negligent.

A general verdict for plaintiff was returned in the amount of $1,250. Judgment was entered for that amount. At the conclusion of the evidence it was stipulated that plaintiff had expended $480.70 for doctors, nurses and hospital bills on account of her injury. This leaves $770 for plaintiff as compensation for the other elements for which she was entitled to damages—that is, damage to her health and physical condition, pain and suffering and prospective pain and suffering and loss of time and work. She asked a new trial on the question of damages alone. That was denied. She appealed and is now asking that the amount of damages be increased by this court or that the case be sent back for new trial on the question of damages alone.

We think there is no doubt about the authority of this court to remand a case for new trial on one or more issues if such issues are separable and were not properly considered and determined by the jury. (See *Carlgren v. Saindon*, 129 Kan. 475, 283 Pac. 620, and cases there cited.)

As to the argument of plaintiff that this court should increase the amount of damages that the jury allowed, it was held in *Mercado v. Nelson*, 118 Kan. 302, 235 Pac. 123,—

"The supreme court has no power to increase the verdict of a jury in favor of one who has sustained personal injuries through the negligence of another." (Syl. ¶ 8.)

We see nothing in the briefs and authorities cited in this case to cause us to change that rule.

The other question in this case is: From the record in this case

can this court say that the issue of damages was not properly considered and determined by the court as a matter of law?

This is one of the most perplexing problems with which appellate courts have to deal. There is no evidence in this record outside of the size of the verdict from which this court can reason that the jury did not consider the issue properly. There is no evidence that the jury was swayed by passion or prejudice; no misconduct on the part of the counsel; no evidence that the jury ignored entirely some one or more elements of damage that it should have considered. In some cases this court has sent the case back for a new trial because the verdict for damages was considered inadequate. That has always been in cases where the elements of liability were proven and either only nominal damages allowed or the record showed that some particular elements of damage had not been considered.

In the case of *Sundgren v. Stevens*, 86 Kan. 154, 119 Pac. 322, the plaintiff alleged quite extensive injuries from an assault. The jury found the question of liability in favor of the plaintiff and assessed as damages one dollar (50 cents for physical pain and 50 cents for insult and indignities). The court held this to be inadequate because it was merely nominal and not compensatory in any degree.

In *McCaslin v. Coal Company*, 119 Kan. 93, 237 Pac. 658, plaintiff had sued for personal injuries incurred while working in defendant's mine. He set out the specific items for damages. The jury brought in a verdict of $240 for loss of wages and $50 for hospital bills. By this verdict they showed that they had entirely overlooked the elements of future earnings, and pain and suffering. The court sent that case back for a new trial on the question of damages. None of the conditions, which plainly existed in these cases, are found in the case at bar.

Early in the history of this state this question perplexed the supreme court, and in the case of *Union Pacific Rly. Co. v. Milliken*, 8 Kan. 647, the court said:

"No fixed rule can be laid down for estimating the damages to be awarded for physical injuries. Great latitude is of necessity allowed to a jury, and within certain limits their assessment whether inadequate or excessive cannot be disturbed. . . . No verdict is right which more than compensates; none which fails to compensate." (p. 655.)

In the case of *Ellis v. Kansas City Public Service Co.*, 131 Kan.

555, 290 Pac. 939, where the plaintiff recovered judgment for $10,000 for physical pain and suffering, the defendant asked that part of this verdict be remitted on account of the fact that it was excessive. The court said:

"This court has often said there is no precise yardstick for gauging the excessiveness of a verdict." (p. 560.)

This remark would apply to an effort to gauge the inadequacy of a verdict, also.

In the case of *Hardwick v. Railways Co.*, 114 Kan. 843, 220 Pac. 1043, which was an action for damages for injuries sustained when defendant's street car collided with the rear of plaintiff's automobile, the jury allowed $500 as damages to plaintiff's automobile and $3,000 for pain and suffering. On appeal it was argued that the verdict was excessive. This court said:

"Error based on an excessive verdict and judgment is seldom an easy question for an appellate court to solve, and it is peculiarly difficult where the sum allowed is for pain and suffering. Of course, rules for dealing with excessive verdicts are not altogether wanting; if on reading the record the conscience of the court is shocked at the verdict, a remittitur or reversal is ordered; but there is no uniform yardstick, no hard and fast rule, by which the excessiveness of a verdict can be measured and determined as in ordinary mathematical calculations. In this case, when we give full credence to the plaintiff's testimony touching his pain and suffering, as we are bound to do because the jury gave it such credence, the verdict and judgment are not so large as to produce such psychological reaction on the judicial conscience as to impel it to order a reduction or reversal." (p. 845.)

In *Fenn v. Kansas Gas & Electric Co.*, 118 Kan. 131, 234 Pac. 7, the court said:

"An excessive verdict and judgment is one of the most difficult problems which an appellate court has to deal with, as there is no uniform standard which can be used to measure the adequacy of verdicts for bodily injuries, including past, present and future pain and suffering; so it has come about that unless the award is so great as to shock the conscience of the reviewing court the verdict and judgment will not be modified or set aside." (p. 134.)

The question in this case in view of those decisions is, Does the verdict shock the judicial conscience? Is it so inadequate as to compel the feeling of dissatisfaction with a revulsion from it at the mere contemplation? This question must be answered in the negative. The circumstances of the injury have been set out in detail in this opinion and probably the thing that prevents this verdict from being a shock to the sensibilities of the court is that had the

defendant filed a cross appeal from the verdict and judgment there is a strong probability that the court would have set it aside on the ground that it was unsupported by sufficient evidence of negligence on the part of the defendant and because there is at least some evidence of contributory negligence on the part of the plaintiff.

The judgment of the court is affirmed.