**Robert F. NEESE and Johnnye Neese, Appellants,**

**v.**

**SHAWNEE MEDICAL CENTER HOSPITAL, INC., a corporation; T. A. Balan; Shawnee Medical Center Clinic, Inc., a corporation; Zimmer-Hoffman Associates, a domestic corporation; and Zimmer U.S.A., Inc., a corporation, Appellees.**

No. 50345.

Supreme Court of Oklahoma.

April 7, 1981.

**1328**

Howard K. Berry, Jr., Berry & Berry, Oklahoma City, for appellants.

Robert H. Gilliland, McAfee, Taft, Mark, Bond, Rucks & Woodruff, Calvin W. Hendrickson, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for appellees.

WILLIAMS, Justice:

This is an appeal from a judgment sustaining defendants' demurrers following

presentation at trial of plaintiffs' case in chief. The journal entry of judgment recites that although "the plaintiffs' proof was sufficient for the issue of the negligence of each defendant to be submitted to the jury" they failed to prove the alleged injuries were proximately caused by the acts of negligence of each defendant. That is the only point raised by appellants and discussed by the parties on appeal.

Our determination is that plaintiffs introduced sufficient evidence to have warranted submission of the issue of proximate cause arising in their medical malpractice action, to the jury.

Plaintiffs brought suit alleging causes of action in negligence and (manufacturers' products) strict liability after plaintiff, Robert F. Neese, had, in 1974, undergone a laminectomy (back operation) performed by defendant, Dr. Balan, at Shawnee Medical Center Hospital, Inc., also a defendant herein.[1]

In their amended petition, plaintiff, Robert F. Neese, alleged as a result of defendants' negligence the following injuries occurred:

The presence of the metal object in his spinal cord has produced, and will produce in the future, limited motion of his body, mental and physical pain and suffering, lost wages and profits, medical expenses and care, and will impair his future earning capacity, and has further produced permanent physical disability which is progressive in nature. He is now totally and permanently disabled . . . .

Plaintiff Johnnye Neese alleged that she was the wife of Mr. Neese and that she had been deprived of his aid, services, productivity and consortium.

During the operation, the lower jaw of a pituitary rongeur, while it was being manipulated by Dr. Balan, broke off in Mr.

1. In their petition, plaintiffs alleged that the defendant Zimmer Manufacturing Company and the defendant Zimmer-Hoffman Associates "designed, manufactured, distributed and sold the pituitary rongeurs surgical instrument." The plaintiffs have also alleged that Dr. Balan was the agent, servant and employee of the defendant Shawnee Medical Center Clinic, Inc.

Neese's spinal column, causing "a major complication."

For the following hour or so the surgeon attempted to find the jaw. His testimony reflected that he searched and probed for it, first visually and then with a succession of instruments. An x-ray machine was also employed in the search and an unspecified number of x-rays were taken in the attempt to ascertain the location of the metal jaw.

At some point subsequent to the mishap, another surgeon, Dr. Jerald Kethley, the chief of staff of the defendant hospital, was called to the operating room. He also searched for the jaw without success. This doctor testified at trial that a lot of bleeding had occurred, that a retractor holding a nerve was manipulated by the surgeons and other hospital personnel assisting the doctors, that the search was near the spinal cord dura and that a nerve root was moved in order to explore.

In response to a question posed concerning what advice he gave Dr. Balan, the surgeon stated:

I recognized that it would be quite difficult to obtain it [the broken jaw of the rongeurs] after he could not obtain it immediately, and because of the angle and because of the bleeding that was present I felt that the patient would suffer more harm than good by finding and removing it and so I gave him my opinion, that it should be abandoned and left.

Thereafter, Dr. Balan made a decision to cease further attempts to locate the broken portion of rongeurs and so concluded the operation.[2]

A decision was made to not tell the patient immediately about the metal having been left in his spine. Dr. Balan testified

he feared such a disclosure would upset Mr. Neese and interfere with his post-operative progress. Mr. Neese was informed of the complication only after he repeatedly complained to his wife of pain in his back and legs, following his discharge from the hospital. She urged him to see Dr. Balan at once, but when he refused, preferring to hold out until his scheduled appointment, she told him about the broken metal jaw left in his spine and her concern.

Thereafter, Mr. Neese went to see Dr. Balan and testified the following conversation took place:

[H]e [Dr. Balan] came in and asked me how I was doing and I said, well, not very good, I still have quite a bit of pain in my back, and he sat down on a small stool and he said, "Your wife and I have been keeping a secret from you. During the operation, a small part of the instrument broke off in your back. I knew where it was but I couldn't get it out and chances are that it won't bother you. But, now I don't want you to lift anything or push anything or pull anything." And, I asked him for how long. He said, "For the rest of your life."

Mr. Neese also testified that he asked if Dr. Balan could remove the piece but was told "no, that it would be too dangerous to try to get out."[3]

Mr. Neese's condition failed to improve and plaintiffs filed the action from which this appeal arises. At the trial, plaintiffs produced the testimony of three expert witnesses: Dr. Balan, an adverse party, Dr. Jerald Kethley, chief of staff at the defendant hospital, and Dr. Moorman Prosser, a specialist in neuropsychiatry and plaintiff Robert F. Neese's personal physician. Both plaintiffs also testified.

---

2. Apparently, the jaw was visible in x-rays taken both during the operation and afterwards. Nevertheless, this appeared to be of little help in the attempt to actually locate the piece as expert medical testimony indicated that the angle which one sees any object appears differently on an x-ray.

3. Mr. Neese was 49 years old at the time of the surgical procedure. He was a retired fireman operating an upholstery shop with his wife and one employee. His injury arose while he was lifting a sofa. Since the operation, he has been determined by the Social Security Administration to be totally disabled.

Plaintiffs, contending that the trial court erred in sustaining defendants' demurrers to the evidence, argue that the defendant doctor's extrajudicial statements to his patient before and following the operation established that Robert F. Neese's injuries were proximately caused by the presence of the broken jaw of the rongeurs in his spinal column. We agree.

Dr. Balan's statements to plaintiffs before the operation was performed of effect that plaintiff husband could reasonably expect, after a recovery period, to go about his normal duties in his upholstery business, his admission that it was not "good practice" to leave things in a wound and his advice, after the operation to not lift, push or pull anything for the rest of his life, in our view warranted submission to the jury of the issue of proximate cause.

Dr. Kethley's testimony substantiated the loss of the rongeurs jaw within Mr. Neese's spinal column and the ineffective efforts to remove it.

The testimony of Dr. Moorman Prosser, Mr. Neese's personal physician and neuropsychiatrist, described Mr. Neese's anxiety, depression and claimed physical and mental disability said to have been fixed at 100 percent by the Social Security Administration. That doctor's testimony may be interpreted as stating the patient's condition had been caused in part by the leaving of the described metal object in his body.[4]

██ The trial court would have been justified in considering Dr. Balan's testimony when ruling on the involved demurrer to plaintiffs' evidence. In *Greenwood v. Harris*, 363 P.2d 85, 88 (Okl.1961), this court addressed the use of an extrajudicial admission of a defendant physician to supply expert testimony required to make out a prima facie case against that physician on a demurrer. Quoting from *Bunghardt v. Younger*, 112 Okl. 185, 239 P. 469 (1925), the court stated:

> In such a case, where expert evidence is required to make a cause of action, and there is evidence of declarations against interest proved to have been made by the defendant, himself an expert, and assuming to treat plaintiff with ordinary skill and care, which with all the other facts and circumstances in evidence, tends to show a want of ordinary skill and care in such treatment and to show a causal relation of such want of skill and care with the resultant detriment complained of, such evidence is sufficient, as against a demurrer thereto to entitle the plaintiff to go to the jury.

██ It has long been observed that while there is no generally recognized explicit presumption that injury results from the presence of a foreign object left in the body during an operation, a conclusion of harm

---

**4.** The testimony of Mrs. Neese at the trial was that before the operation her husband was a very outgoing and happy person. Other evidence in the record indicates that prior to the surgery he was not a nervous type individual, that the plaintiffs enjoyed dancing, that Mr. Neese liked to hunt and had been the coach of a boys' football team, all in addition to his regular work at the upholstery shop.

The evidence shows that following the operation, Mr. Neese walks with a limp, that he has trouble climbing stairs as well as stooping, bending or squatting. He testified his knee now buckles and his foot slaps when he walks. He stated his back is painful, that he is anxious and worried over the metal jaw being in his spine, that he would like to have it removed and that he has been instructed to have it x-rayed periodically. His contribution towards the work at the upholstery business now consists only of answering the phone and making house calls on prospective customers.

Appellees assert that Mr. Neese suffered from "prior back problems, kidney stones, stomach problems, obesity and high blood pressure," all of which they claim are equally probable causes of the symptoms of which plaintiff alleged he was suffering.

In view of Mrs. Neese's testimony concerning her husband's health and activities and finding no expert medical testimony whatever which links these events from Mr. Neese's prior medical history to his present injuries, we are hard pressed to give any further weight to defendants' claim than to suggest it may have raised a jury question.

so resulting will be more readily supported than in most other situations.[5]

In *Laws v. Harter*, 534 S.W.2d 449, 451 (Ky.1975), it was argued that no evidence was introduced by the plaintiff at trial as to the damage, if any, which resulted from an operation purportedly for exploratory purposes, during which a sponge, left in plaintiff's body during a previous operation, was removed. The court there stated:

> There was evidence that an abdominal operation was performed during which the sponge was removed. That appellant suffered some pain, discomfort and mental anguish as a result of that operation is not a matter of *pure* speculation and under these circumstances the mere fact that the negligence of appellee, Harter, caused appellant to be subjected to an additional surgical procedure, if that finding is made by a jury, is sufficient to support a reasonable recovery for pain and suffering.

■ Defendants contend that appellants failed to prove "by medical evidence, based upon reasonable medical certainty," that Mr. Neese's problems were caused by the presence of the metal in his body.

Again, we do not agree. Admittedly the described metal object remains in plaintiff's body. We determine the testimony adduced at the trial makes out a prima facie case warranting submission to the jury of the question whether plaintiffs have suffered detriment, proximately caused by the presence of the metal jaw in Mr. Neese's spinal column.

In *James v. United States*, 483 F.Supp. 581, 585 (N.D.Calif.1980), it was stated,

"Notwithstanding some seeming semantic variations in the cases, it is clear enough that once plaintiffs have proved defendant's negligence, evidence which shows the causal relationship to the claimed injury to have a reasonable medical basis, as opposed to mere conjecture, will suffice."

In *Jordan v. General Motors Corp.*, 590 P.2d 193, 196 (Okl.1979), we stated, "[O]n a demurrer to the evidence ... [the] trial court must accept as true all evidence and reasonable inferences therefrom favorable to the party against whom the motion is directed, while disregarding conflicting evidence favorable to the defendant."

Here the trial court held there was sufficient proof for submission of the issue of negligence to the jury. Upon examination of the evidence contained in the record herein, we cannot say that a causal relationship between the defendants' negligence and the plaintiffs' injuries is mere speculation or conjecture. We determine, under the test set forth in *Jordan v. General Motors Corp.*, supra, that there is sufficient proof to constitute a reasonable medical basis for submission to the jury of the issue as to whether defendants' conduct was the proximate cause of plaintiff husband's injuries.

■ Strict (manufacturers' products) liability was pleaded by plaintiffs and it was proved that defendants Zimmer and Zimmer-Hoffman sold the pituitary rongeur involved to defendant hospital. The trial judge at conclusion of the aborted trial mentioned the *Kirkland* case.[6] However, no particular argument was presented to this court directly concerning the issue of

---

5. See Annot., 13 A.L.R.2d 11, § 17 (1950), and cases cited therein, particularly, *Russel v. Newman*, 116 Kan. 268, 226 P. 752 (1924), where it was determined that negligence of physicians in leaving sponge in plaintiff following operation must have resulted in injury in view of plaintiff's improvement after its removal, despite testimony by defendants and other doctors that leaving the sponge within the incision was not likely to cause any injurious results. In *Console v. Nickou*, 156 Conn. 268, 240 A.2d 895 (1968), a defendant doctor who had negli-

gently left a suturing needle in plaintiff contended that there was no expert testimony that his negligence was the proximate cause of plaintiff's asserted injuries. That court there stated that circumstantial evidence was sufficient to establish plaintiff's injuries were proximately caused by defendant's negligence.

6. *Kirkland v. General Motors Corp.*, 521 P.2d 1353, 1363 (Okl.1974).

causation under (manufacturers' products) strict liability. In *Kirkland* we noted the "plaintiff must prove the product was the cause of the injury." We note parenthetically that the proof outlined above is sufficient to warrant submission to the jury of the issue of whether Mr. Neese's injuries were caused by a defect in the rongeurs instrument along with the issues of negligence and proximate cause.

We therefore reverse the trial court's order sustaining the demurrers and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

BARNES, V. C. J., and SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.

IRWIN, C. J., and LAVENDER, J., dissent.