No. 21,374.

THE STATE OF KANSAS, ex rel. BLANCHE CARMONS, *Appellant,*
v. ROBERT L. WOODS, *Appellee.*

### SYLLABUS BY THE COURT.

1. ILLEGITIMATE CHILD—*Presumption of Defendant's Innocence—Instruction.* In a bastardy proceeding, the intruction given to the jury that "the law presumes morality and uprightness until the contrary is made to appear from the evidence, and you are instructed that defendant in this case is presumed to be innocent of the charge made against him and that presumption remains with him through all stages of the trial and until overcome by the evidence of the state by a preponderance of the credible evidence," is held not erroneous.

2. EVIDENCE—*Not Directly Contradicted—Province of Jury.* A jury is not warranted in arbitrarily or capriciously rejecting the testimony of a witness, but neither are they required to accept and give effect to testimony which they find to be unreliable, although it may be uncontradicted.

Appeal from Chase district court; WILLIAM C. HARRIS, judge. Opinion filed February 9, 1918. Affirmed.

*W. H. Carpenter,* of Marion, for the appellant.

*R. M. Hamer,* and *H. E. Ganse,* both of Emporia, for the appellee.

The State, *ex rel.*, v. Woods.

The opinion of the court was delivered by

JOHNSTON, C. J.: In a complaint filed by Blanche Carmons, she charged Robert L. Woods with the paternity of her child. A trial before a jury was had, and a finding was made by the jury and approved by the court that the defendant was not the father of the bastard child.

On appeal complaint is made of an instruction that—

"The law presumes morality and uprightness until the contrary is made to appear from the evidence, and you are instructed that defendant in this case is presumed to be innocent of the charge made against him and that presumption remains with him through all stages of the trial and until overcome by the evidence of the state by a preponderance of the credible evidence."

It is contended that, as the proceedings in a prosecution for bastardy are governed by rules regulating civil actions, there was no room for a presumption of innocence or good conduct, nor any justification for giving the instruction. In civil actions for wrong or fraud the party charged may ordinarily rest on the presumption of good faith and good conduct until something to the contrary is shown. In *Baughman, Sheriff, v. Penn,* 33 Kan. 504, 6 Pac. 890, it was held that " 'the law presumes, in the absence of evidence to the contrary, that the business transactions of every man are done in good faith and for an honest purpose.' " (p. 508.) Where it was claimed that a railroad company had wrongfully built a railroad through the Indian Territory without right or license, it was held that there is no presumption that a party is a wrongdoer, but, in the absence of a contrary showing, the presumption is the reverse of that. (*Speer v. M. K. & T. Rly. Co.,* 23 Kan. 571.) In an action to recover on a promissory note properly indorsed the law presumes, in the absence of evidence to the contrary, that the holder has acquired it honestly, and that it was transferred to him before due and for value. (*Ecton v. Harlan,* 20 Kan. 452.) Many other cases might be cited to the effect that honesty and good conduct are to be presumed, both as to public officers and private persons, where there is no evidence to the contrary. In ordinary negligence cases the rule is that the burden is upon the plaintiff to prove the negligence alleged, which is only a negative expression of the rule that the de-

fendant is presumed to be free from negligence until a showing to the contrary is made. However, we have an authority more directly in point than any of those cited. In a bastardy proceeding it was said:

"The law presumes morality and uprightness of conduct until the contrary is established, and it is not error to instruct the jury trying an action for bastardy, in which the defendant denies the charge, that the defendant is presumed to be innocent until it has been proven to the satisfaction of the jury by a preponderance of the evidence that he is the father of the relatrix's child." (The State, ex rel., v. Creager, 97 Kan. 334, syl. ¶ 3, 155 Pac. 29.)

The similarity of the language used in the instruction in question indicates that this authority was before the court when the instruction was written, and it is clear that no error was committed in the giving of the instruction.

It is also insisted that the jury ignored the evidence given in behalf of the relatrix, and, therefore, the verdict should have been set aside. She gave testimony tending to show acts of intimacy with the defendant, and that he was the father of her child. Other testimony was given of admissions made by him to the same effect, but the jury appears to have deemed the evidence to be incredible. The defendant did not testify, and the only evidence offered in his behalf was to the effect that the period of gestation is ordinarily 280 days, whereas the child of the relatrix was born 261 days from the time of the alleged intercourse. It is insisted that as the testimony of the relatrix was not contradicted by the defendant, nor directly disputed by other testimony, the verdict should have been set aside by the court. There was little opposing testimony, but the jury were not required to accredit testimony which they deemed to be unworthy of belief. In its instructions the court properly advised the jury, as is usually done, to the effect that if they believed any witness had willfully testified falsely, they might disregard all of the testimony of the witness or so much of it as they believed to be untrue, and that this rule applied to witnesses whose testimony was not contradicted by that of the other witnesses. Of course, jurors are not warranted in arbitrarily or capriciously rejecting the testimony of a witness, but should carefully and candidly give effect to that which is credible. No fixed rule can be laid down as to the test of credibility. It is a question for the jury to consider,

and it has been decided that, although witnesses are not contradicted, a jury may discard their testimony, if they honestly regard it to be unreliable. In *Jevons v. Railroad Co.,* 70 Kan. 491, 78 Pac. 817, where strong evidence had been offered in support of an affirmative defense on which the court had directed a verdict, it was held that, the burden of proving the defense being upon the defendant, "it cannot be said, as a matter of law, that the jury were bound to accept the evidence as true, even if not contradicted." (p. 497.) In *Cobe v. Coughlin,* 83 Kan. 522, 112 Pac. 115, where it was insisted that there was no opposing testimony and the court should direct a verdict, it was said that "a court or jury is not required to accept a statement of a witness as conclusive, although there may be no direct evidence contradicting his statements, and hence the court could not direct the verdict." (p. 525.) In *Howell v. Harper,* 86 Kan. 396, 121 Pac. 362, it was remarked that "it does not necessarily follow that a fact is established because testimony fairly tending to prove it is uncontradicted by direct opposing testimony. It cannot be said, as matter of law, that the jury (or court trying the facts) is bound to accept the evidence as true, although not contradicted by direct evidence." (p. 397.) (See, also, *Harrod v. Latham,* 77 Kan. 466, 95 Pac. 11; *Saindon v. Morrell,* 78 Kan. 53, 95 Pac. 1056; *Fisk v. Neptune,* 96 Kan. 16, 149 Pac. 692; *Wyrick v. Street Railway Co.,* 100 Kan. 122, 163 Pac. 1059.)

The court that watched the course of the trial and the appearance of the witnesses denied the motion of relatrix to give judgment against the defendant notwithstanding the verdict of the jury, and also overruled her motion for a new trial based upon the ground that the verdict was contrary to the evidence. No attack is made upon the jury and their conduct, other than that they did not credit testimony offered in behalf of the relatrix. Under the authorities cited, we cannot interfere with the approved finding of the jury and, therefore, the judgment is affirmed.