ELIZABETH FRIESEN, APPELLANT, V. PETER REIMER, APPELLEE.

FILED MARCH 28, 1933. No. 28461.

*John C. Hartigan,* for appellant.

*Denny & Denny, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This action for damages was brought against the defendant for injuring plaintiff by backing his car into the car occupied by her. The jury returned a verdict for the defendant. Motion for new trial was overruled, and judgment against plaintiff entered for $80.60, defendant's costs.

The facts may be briefly stated as follows: The plaintiff, Mrs. Elizabeth Friesen, aged about 29 years, was sitting in their Star coach, in a churchyard west of Jansen, Jefferson county, Nebraska, about 9:30 p. m., October 16, 1929, with a three-year-old daughter sleeping on the back seat and a five-year-old daughter sitting on the front seat with the plaintiff, who was behind the steering wheel, when the defendant, without warning, backed his Ford into their car and immediately drove off. The collision was of sufficient force to bend the fender and the frame and break the running board of plaintiff's car. The five-year-old girl fell against her mother's side, and, in addition, plaintiff was badly shaken by being thrown against the wheel and side of the car. Plaintiff was at that time six months along in pregnancy, and labor pains began that night after she reached home, and a doctor, being called, remained about two hours. About 3 o'clock the next morning he was called again, and remained until morning. The plaintiff suffered labor pains and chills, and the doctor put cold packs on her head, raised the foot of the bed, and applied hot applications to allay the pain. A premature childbirth was avoided at that time, but plaintiff was compelled to remain in bed for about three weeks, and remained under the doctor's care until the child was born, upon January 11, 1930, and testified that she had been unable to do all of her housework from the date of the accident up to the time of trial. The plaintiff also testified that upon the night of December 25, 1929, she had been taken sick again with labor pains, and, in addition to Dr. Reynolds, who had treated her the night of the accident, they called Dr. Brugh, who had been their family doctor for some

years. The plaintiff testified that she had had a miscarriage when her first child was born, and that about a year and a half afterwards she had a miscarriage, and that after that she had given birth to two perfectly normal children. Dr. S. A. Brugh testified that he attended plaintiff in childbirth July 31, 1922, and that it was a full-time pregnancy, with an instrumental delivery, but that the child died shortly after birth; that she was in labor for some time; that in the fall of 1924 she gave birth to a child normally, and he also attended her at the births of two other children. When Dr. Brugh was asked about attending the plaintiff at the time of childbirth, an objection was made, reading as follows: "Objected to as incompetent, irrelevant and immaterial and not within the issues, and the witness is an incompetent witness as physician of the plaintiff, unless plaintiff waives the privilege, which she does not;" and this objection was to continue throughout the examination into former childbirths without repetition.

1. In the motion for a new trial it is set out that the court erred in admitting Dr. Brugh's testimony concerning all matters growing out of his relationship as family physician of the plaintiff previous to the accident in question.

From a careful reading of the briefs, it appears that this appeal rests entirely upon what is meant by privileged communications and when such prohibition is waived under sections 20-1206 and 20-1207, Comp. St. 1929. Section 20-1206 reads as follows: "No practicing attorney, counselor, physician, surgeon, minister of the gospel or priest of any denomination, shall be allowed in giving testimony to disclose any confidential communication, properly intrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline." And no complaint is offered in reference to the rulings relating to this section of our statute.

Section 20-1207, in so far as it applies to the issues in this case, provides generally, and may be stated rather freely, as follows: That the prohibitions of the preceding section do not apply, first, to cases where the party in whose favor the respective provisions are enacted waives the rights thereby conferred, or, second, if a party to any such action shall offer evidence with reference to his physical or mental condition, or the alleged cause thereof. In either of these cases such person shall be deemed to have waived the right conferred in section 20-1206, hereinabove set out, as to any physician who shall have attended such party. This section 20-1207 appeared in Comp. St. 1922 as section 8841, and simply provided that the prohibitions in regard to privileged communications did not apply when the party in whose favor the provisions were enacted waived the rights thereby conferred, and this came up for an exhaustive examination by Judge Letton in the case of *Culver v. Union P. R. Co.*, 112 Neb. 441, released by this court July 18, 1924. A verdict for $50,000 had been returned in favor of the plaintiff because of an injury that Culver alleged was brought on by twisting his back while lifting a hand-car. The plaintiff testified that he had had malaria about a month while in the army on the Mexican border, but had suffered with nothing else that he could recall at that time. On cross-examination he was asked whether he had not been treated for a chancre while on the border, and the objection to this question was sustained, and the defendant offered to prove by a sergeant of the United States army, who was not a physician, nor acting under a physician's orders, and who was acting under the regulations of the army, and who was not a trained nurse, that he had given the plaintiff prophylactic treatment for the control of venereal disease on numerous occasions while he was with the United States army, stationed on the Mexican border, which evidence was contained in an offer to prove, the objections to which were sustained, and the evidence was not permitted to go before the jury, and it was held that this

evidence tended to support the defendant's theory that the injury to his spine was the result of syphilitic affection, and the exclusion of this testimony was reversible error.

The next legislature, by an act approved March 30, 1925 (Laws 1925, ch. 74) repealed section 8841, Comp. St. 1922, and enacted in its place the section involved in this case, and now known as section 20-1207, Comp. St. 1929.

For years communications between certain parties have been privileged. As early as the end of the second century A. D., the rule was established in Roman law that a slave could not testify for or against his master. At common law, communications between an attorney and client were privileged, but no privilege existed as to communications between physician and patient.

Our statute seals the lips of the physician against divulging in a court of justice the information which it was necessary for him to acquire during the performance of his professional duties. This privilege is, therefore, for the patient's protection, but the patient may always waive it by express consent, or by calling his physician to testify, or by offering his own evidence in reference thereto.

We cannot refrain from the belief that, in justice, the strict rule, prevailing in some jurisdictions, should be somewhat relaxed in an action wherein a patient voluntarily submits his physical or mental condition for adjudication, and this conclusion finds support in the following cases:

"A patient having been treated by physicians may waive her privilege to object to testimony of the physicians as to matters ascertained by them while treating her, either by calling the physician to testify as to privileged matters, by calling other witnesses to testify to the same facts, or by herself giving testimony with reference to the transaction." *Woods v. Lisbon,* 130 N. W. 372 (150 Ia. 433).

"When part of a confidential communication between physician and patient is put in evidence by one party, the other party may give the whole communication 'on

the same subject.' The trial court must determine whether the evidence offered is on the same subject, and its ruling will not be regarded as erroneous unless there is a clear abuse of discretion." *Struble v. Village of De-Witt,* 89 Neb. 726.

"Where, in an action for injuries, plaintiff testified to complaints to his physician indicating injury to his back, vertebræ, or spine, he thereby waived the right to claim a privilege to prevent the physician from testifying that no complaints as to those particular injuries were made." *Reed v. Rex Fuel Co.,* 141 N. W. 1056 (160 Ia. 510).

One injured in a railroad wreck, who, in a suit to recover damages for the injuries, testifies as to the injuries and the treatment given him, and calls his own physician to testify as to such injuries, waives the provision of the statute making incompetent as a witness a physician or surgeon concerning information acquired from a patient while attending him in a professional character, and other physicians who treated him for such injuries at the time of the accident may therefore testify as to their extent and the treatment given. *Epstein v. Pennsylvania R. Co.,* 250 Mo. 1, 48 L. R. A. n. s. 394, Ann. Cas. 1915A, 423, and note; *National Annuity Ass'n v. McCall,* 103 Ark. 201, 48 L. R. A. n. s. 418; *Koskovich v. Rodestock,* 107 Neb. 116; *Sovereign Camp, W. O. W., v. Grandon,* 64 Neb. 39; *Coca Cola Bottling Works v. Simpson,* 158 Miss. 390, 72 A. L. R. 143; *Lampel v. Goldstein,* 167 N. Y. Supp. 576.

We do not believe that it was reversible error for the trial court to admit the evidence of Dr. Brugh which was objected to by the plaintiff. He had attended the plaintiff as family physician for many years, and had attended her in normal childbirths and in premature pregnancies and threatened miscarriages. In addition to that, he had been called in consultation with Dr. Reynolds, and remained for hours, treating her for a threatened premature birth, upon December 25, 1929, following this accident, and Dr. Reynolds had testified in detail about the occurrences of that night for the plaintiff.

In the case of *Roeser v. Pease,* 37 Okla. 222, the plaintiff had brought an action for injuries, and testified that prior to the accident she had enjoyed good health, and that since the accident she had suffered headaches, which she had never had before. The question arose as to whether she could so testify and then prevent the testimony of her physician, which would be the only available impeaching evidence. The opinion held that a person is entitled to have her physical disabilities protected from public curiosity, but when she bases an action for damages upon the existence of certain disabilities, and herself testifies in reference thereto, she is no longer entitled to claim a privilege for her condition, as the opinion holds that the statute does not contemplate protecting her in such a case.

In our opinion, section 20-1207, Comp. St. 1929, provides in clear and simple language that, when a party offers evidence with reference to her physical condition, the right of privilege is waived as to *any* physician who shall have attended said party. The court should not read into a statute exceptions not made by the legislature. *State v. School District,* 99 Neb. 338. And also we have held that, where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain their meaning; a mere reading will suffice. *In re Estate of Bayer,* 116 Neb. 670.

In this case the defendant does not deny backing into the plaintiff's car. The evidence clearly proves that when she reached home she suffered severe pains, and while a premature birth was avoided by the treatment given her by her physician, yet for the pain and suffering, which the undisputed evidence shows she was subjected to by the negligence of the defendant, she was entitled to at least nominal damages, and because such damages were not awarded, the judgment is reversed and the cause remanded for a new trial.

REVERSED.