No. 33,402

THE STATE OF KANSAS, *Appellee*, v. J. H. JONES, *Appellant.*

(75 P. 2d 230)

Opinion filed January 29, 1938.

*Payne H. Ratner, Stuart T. McAlister* and *Louise Mattox,* all of Parsons, for the appellant.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, and *Glenn Jones,* county attorney, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal from a conviction on a charge of unlawful and felonious possession of intoxicating liquor. Defendant contends the trial court erred in the admission of a former record of conviction on the charge of unlawful possession, before a justice of the peace, and that the evidence was also insufficient to sustain the charge of possession on the date stated in the instant information.

The first alleged error pertains to what defendant claims to have been an improper authentication of the docket of a justice of the peace, concerning the former conviction. It is urged the record was not certified as required by G. S. 1935, 60-2860, where the proof of former conviction is attempted to be made by the records of a former justice of the peace before whom the original conviction was had.

The trouble with that contention is the proof of former conviction was not attempted to be made by means of a certified copy, as permitted by that statute. The proof of former conviction was made by introducing the original docket, as authorized by G. S. 1935, 60-2854. The statute first mentioned was enacted for the purpose of facilitating the proof by making competent a properly certified record. The fact a party does not see fit to avail himself of the more convenient method furnished under the provisions of G. S. 1935, 60-2860, does not mean that he will not be permitted to employ the more cumbersome method provided by G. S. 1935, 60-2854. (See *State v. Merriweather*, 136 Kan. 337, 339, 15 P. 2d 425.) The present justice of the peace produced and identified the criminal docket which contained the former conviction. He testified in effect that he had the custody and control of the criminal docket and that he knew of his own personal knowledge that Jim Jones, the name under which defendant was charged in the first case, and J. H. Jones, the name under which defendant was charged in the instant case, was one and the same person. The defendant testified in his own behalf and admitted having served a previous sentence for violation of the prohibitory liquor law. The proof of former conviction was clearly sufficient.

Was the evidence sufficient to establish unlawful possession of intoxicating liquors on the 28th day of September, 1936, the date set forth in the instant information? The defendant directs our attention to defense evidence, which if believed by the jury would have resulted in his acquittal. We need, of course, consider only the evidence which supports or reasonably tends to support the verdict. Such evidence was in substance as follows: The liquor was found on premises occupied by the defendant; Miller, the chief of police of the city of Parsons, and former sheriff of Labette county, had been acquainted with the defendant about twenty years; on the 28th day of September he, together with Glenn Starrett and Art Malsed, federal prohibition agents, went to defendant's residence at about twelve o'clock noon; Starrett went to the front door, and Malsed and Miller went to the back door of the house; when they reached the southwest corner of the house the defendant was in the yard, but Malsed got by him and kept on going; defendant spoke to Miller and then turned and went to the house and ran up to Malsed at the back door; Miller stepped onto the porch and took hold of the defendant because the defendant had taken hold of Malsed; Miller said to the defendant, "Jim, you better lay off of him"; Jim said,

"All right, Bill"; Malsed went into the house; the defendant and Miller were on the porch, and defendant said, "I am caught again"; Miller said, "Well, you haven't got anyone to blame but yourself"; and the defendant said "No," and the defendant further said, "I was just going to sell a little more and then I was quitting." The officers found bootleg whisky in bottles and jugs on the floor of the bathroom; there was a lid on an old well or cistern which was underneath the floor, and bottles of liquor had been placed on some iron bars over the top of the well and below the level of the floor; there was a sack and a half full of these bottles; the sacks were sugar gunny sacks; defendant had lived at this place at two different times; the reputation of the place was bad and its reputation was that of being a place where liquors were kept and sold; the chief of police had been out there on numerous raids and had found intoxicating liquor there; four one-gallon jugs of unstamped liquor were on the floor, in addition to bottles; there was a hammer lying by them; there were four one-gallon jugs of colored whisky without stamps, seven pints of Old Quaker, three pints of State Fair whisky, four pints of Segram's whisky, five pints of Quaker gin, eleven pints of Gold Feather gin, nine 4-5th quarts of White Swan gin, and two 4-5th quarts of Cocktail Hour gin, and there were one or two bottles of sloe gin.

After Starrett unhooked the back screen door the defendant came to the kitchen and Starrett asked him "if that was all the liquor he had in that room," and the defendant said, "That is all I got." On the way to Fort Scott defendant said, "I never hauled a drop of liquor in my life," and Starrett said, "Well, did somebody bring it in?" and the defendant said, "Yes." On cross-examination Starrett testified, in effect, the defendant might have said "that is all there is there," or "here," instead of "that was all he had."

Defendant insists the uncontradicted evidence was that others, whose names he did not know, had brought the whisky to his home, and hence the conviction cannot stand. He insists that at most the evidence discloses defendant permitted others to have liquor on his premises and that such facts constitute an entirely separate and distinct offense from the offense with which he was charged. We need not dwell long on that contention. It is true defendant was not charged with permitting another or others to have, keep or use intoxicating liquors on his premises. It is also true he was not convicted of that offense. The jury believed defendant was guilty of the crime with which he was charged, to wit, that of having posses-

sion of the liquor, and it disbelieved the story the liquor was owned by and was in the possession of some unknown persons who had simply brought it to defendant's home. The jury was not obliged to believe uncontradicted testimony of the defendant or that of any other witness or witnesses. (*State v. Stephens,* 146 Kan. 660, 72 P. 2d 975.) Moreover, the testimony of the officers concerning what the defendant had told them clearly tended to show the defendant was in possession of the liquor and that he intended to sell it. It is therefore obvious the evidence on which defendant relies was in fart contradicted. There was abundant evidence to support the charge of possession by defendant. The record discloses no complaint that the instructions did not fully and properly state the law applicable to the facts under the contention of both the state and the defendant. Under these circumstances defendant had a fair trial and is in no position to complain.

It is further suggested the introduction of the record of former conviction prejudiced the defendant before the jury. We find no objection to the record of former conviction on that ground. Such objection, if it had been made, would have been futile. In this state the second infraction of the prohibitory liquor law constitutes a distinct crime, a felony. (G. S. 1935, 21-2146.) The formalities of the felonious charge are required to be pleaded in the information and of necessity proved to the satisfaction of the jury. The former conviction under the prohibitory liquor law is an element of the felony and is based on an entirely different principle than the proof of a former conviction under our habitual-criminal act. Under the latter act the former conviction is not an element of the offense and need be considered only by the trial court in order to determine the sentence to be imposed. The sentence to be imposed under that act is solely a question of law and does not concern the jury. For an analysis of this distinction and the reasons underlying the same, see *Levell v. Simpson,* 142 Kan. 892, 52 P. 2d 372, and *Glover v. Simpson,* 144 Kan. 153, 58 P. 2d 73.

The judgment is affirmed.