McBRIDE, Judge.
About dusk on May 23, 1954, a Pontiac automobile struck a Jeep station wagon, and as a result of the impact both vehicles were damaged and the driver of the station wagon and his passenger were allegedly injured. The accident happened in the intersection formed by Nashville Avenue and the roadway of St. Charles Avenue dedicated to traffic moving- toward uptown. The station wagon, owned by William M. Curry, was being driven by his minor son, Edward, on Nashville Avenue in the general direction of the lake. Another son, William M. Curry, Jr., was a passenger in the station wagon. The other vehicle, the Pontiac, was being driven by William Fendt in an uptown direction on St. Charles Avenue.
By this suit plaintiff seeks recovery from Fendt for the damages to the station wagon, and for the use and benefit of his minor sons above-named, he is seeking damages for their physical injuries. In a reconven-tional demand Fendt prayed for judgment against plaintiff for the damages sustained by the Pontiac.
Charges and countercharges of negligence are made; in the alternative, defendant pleads the contributory negligence of the driver of plaintiff’s vehicle as a bar to recovery.
After hearing the case on the merits, the lower court dismissed both the main and the reconventional demands. Plaintiff, in his individual capacity, has appealed; he also appeals on behalf of his minor son, William M. Curry, Jr.
Traffic at the intersection is controlled by the conventional red-yellow-green semaphore light signal, and the case must turn on the question which driver was proceeding on a favorable light. Unquestionably the trial judge believed that both disregarded the light and that each negligently entered the intersection on an improper signal. Although the record is replete with contradictory evidence, a careful examination thereof forces us to reach the same conclusion as did the judge below.
The Curry boys upon reaching St. Charles Avenue were confronted with a red signal light and their vehicle was brought to a stop in obedience thereto. They both insist the station wagon was not started in forward motion until the light had changed and the favorable green signal appeared. They admit that another automobile was stopped to their left awaiting the same green light and that this vehicle remained in a stationary position as they moved forward.
Plaintiff produced as witnesses Pelton and Mrs. Holliday who say they saw the accident and claim they had their eyes focused on the light at the time of the collision, and that the green signal was showing for the station wagon as it was passing across St. Charles Avenue.
Mrs. Holliday, although most positive that the station wagon had the green light, made a statement that is entirely out of keeping with the testimony of the other of plaintiff’s witnesses. She claims that the station wagon was negotiating a left turn in order to go in an uptown direction on St. Charles Avenue when it was struck. She is mistaken as young Curry, the driver of the station wagon, never intended to turn left, nor did he do so, and it is an undeniable fact that his course was a straight one out Nashville Avenue.
*166 Pelton was driving his automobile up St. Charles Avenue but came to a stop at Nashville Avenue as a red light confronted him. He says his car was still in this stationary position when Fendt’s car passed on his right, ran out into the intersection, and crashed into the station wagon.
Mrs. Holliday’s vantage point was from an automobile in which she was a passenger. Her car, she claims, had been proceeding in Nashville Avenue toward the river, but that her driver stopped upon reaching St. Charles Avenue 'because of a red signal for traffic traveling on Nashville Avenue. This was the same red light for which young Curry had stopped on the opposite side of St. Charles Avenue. She also stated the significant fact that her car had moved only two feet after the green light showed and it was then that the accident happened. If this be true, then the Curry boys, if they started out on the green light, traversed the downtown-bound roadway of St. Charles Avenue, the neutral ground, and had gotten into the uptown-bound roadway while her vehicle only moved a distance of two feet.
Defendant’s story is that he was driving up St. Charles Avenue at about 30 miles per hour on a green light. He states he had this favorable signal until the front of his car about reached the intersection and then it was the light changed to an amber color, whereupon he applied his brakes but to no avail and his car skidded into the Curry vehicle. Stein, defendant’s passenger, was either sleeping or relaxing at the time and his testimony is unimportant.
Neither driver saw the other car until a moment before the crash. Our firm conviction is that Edward Curry started forward before the light changed to green and it was not until he reached the uptown-bound roadway of St. Charles Avenue that such signal appeared. This theory is fully supported by the testimony of Mrs. Holli-day. She stated her driver was also waiting for the favorable green light for vehicles on Nashville Avenue, and after its appearance the car travelled but two feet when the accident happened. It is also significant that the car which had been stopped to the right of the Curry vehicle was left behind. This car, too, was waiting for the green signal. Every circumstance points up that young Curry started forward before the proper signal made its appearance.
The negligence of the defendant is too obvious to discuss. Our belief is that he dashed to the right of Pelton’s car in an attempt to “beat” the light and ran into the station wagon whose driver had the same idea in mind.
Having arrived at this conclusion that both drivers were guilty of concurring fault, in view of defendant’s plea of contributory negligence, the question arises whether the negligence of Edward Curry, who is a minor, prevents his father, the plaintiff, from recovering the amount of damages the station wagon sustained as a result of the accident.
The record is sufficient to disclose that the plaintiff loaned the vehicle to his sons and they were on the way to get their dates when the accident occurred. They were neither the agents of nor on a mission for their father; on the contrary, they were going about their own affairs. It is a well-settled principle of law that the owner of an automobile is entitled to recover the amount of damages sustained by it in an accident to which the negligence of the borrower thereof may have contributed. See Emmco Ins. Co. v. Savoy, La.App., 71 So.2d 573, and the several cases therein cited. Under this rule if Edward Curry ■had been above the age of majority, his negligence in the operation of the borrowed vehicle, which negligence contributed to the accident and consequent damages, perhaps could not be imputed to the elder Curry as barring his recovery.
However, Edward Curry is an un-emancipated minor residing with his father, the plaintiff. We must, therefore, hold that this being the case the rule above-mentioned as respects the contributory negli *167 gence of the borrower of an automobile does not apply and that the contributory negligence of the minor borrower precludes his father, plaintiff in the main demand, from recovery for his property damage. For a full discussion of this proposition see Pancoast v. Cooperative Cab Co., La.App., 37 So.2d 452.
The status of the other Curry boy, William, Jr., was guest passenger in the station wagon, and under jurisprudence too well settled to require citation whatever negligence there was on the part of the driver, Edward Curry, is not to be imputed to him, and Edward Curry’s negligence would not bar his guest passenger’s right to recover.
The petition alleges that William M. Curry, Jr., sustained personal injuries consisting of bruises and shock, for which the sum of $250 is claimed, but we find no proof in the record that he sustained injuries sufficiently serious, if any at all, to warrant the allowance of damages. Anent his injuries all the evidence contained in the record appears from his own testimony on direct examination. It runs thus:
“Q. Now, did you receive any injuries? A. Well, the jolt of it I hurt my head on the top of the window.
“Q. You didn’t receive any serious injuries? A. No, sir.
“Q. Go to a doctor? A. No.
“Q. Did you suffer any pain? A. Well, a headache maybe a day or two.
“Q. Nothing serious? A. No.”
In a similar situation in Bryant v. Parr, La.App., 86 So.2d 115, we denied a recovery to plaintiff and applied the doctrine de mini-mis non curat lex, and circumstances warrant the application of that doctrine here.
The judgment appealed from is affirmed.
Affirmed.
REGAN, J., takes no part.