No. 43,209

MARY RUTH SWALLOW, *Appellant*, v. HOWARD McCOY, *Appellee.*

(381 P. 2d 350)

Opinion filed May 11, 1963,

*Royce E. Wallace,* of Wichita, argued the cause, and *Dale M. Bryant, Morris H. Cundiff, Garner E. Shriver, Glenn J. Shanahan,* and *Orlin L. Wagner,* all of Wichita, were with him on the briefs for the appellant.

*Alvin D. Herrington,* of Wichita, argued the cause, and *William Tinker, Arthur W. Skaer, Hugh P. Quinn, Richard T. Foster,* and *Lee H. Woodard,* all of Wichita, were with him on the briefs for the appellee, and *W. Getto McDonald,* of Wichita, of counsel.

The opinion of the court was delivered by

JACKSON, J.: This appeal involves a damage action based upon an automobile collision in Wichita. The plaintiff-appellant recovered a verdict but brings this appeal claiming the damages assessed by the jury were inadequate, and that she should have been granted a new trial.

The accident occurred on May 28, 1960, at approximately eight o'clock in the evening. Appellee was driving in a northerly direction

on Broadway Street or North U. S. Highway 81 in Sedgwick County, Kansas. At the time it was dark, warm and raining, and after signaling for some 300 feet with his turning light, he drove into a private drive after making a left turn. Appellant testified that at the time she entered or left the intersection of Broadway and 33rd Streets she saw appellee start to make his left turn. On cross-examination, appellant testified that she was just past the intersection when she first saw appellee making his left turn. Still later it appeared that appellant meant that she had gone some 50 or 100 feet past the intersection when she first saw the appellee turning.

Appellee testified that he saw appellant just as she left the intersection and that he had already commenced his turn.

An expert witness testified in answer to a hypothetical question that appellant's speed must have been 66.1 miles per hour at the time appellee first began his turn. Appellant had testified that she hit her brakes as soon as she was aware of appellee's turning car.

Officer Stackley, one of the experts, testified that appellant's car should have come to a stop before hitting appellee's car, if traveling only 40 miles per hour. The speed limit was said to be 40 miles an hour.

It might also be mentioned that appellant's car traveled some 200 feet beyond the place of impact with appellee's car as it went into the driveway and also sideswiped another north bound car on Broadway.

In finding the verdict for the appellant the jury answered five questions as follows:

"We, the Jury, impaneled and sworn in the above entitled case, do upon our oath find in favor of the plaintiff and assess damages as follows: First cause of action: $750.00. Second cause of action: $ none. Date of this verdict April 5, 1962.

"And the jury did further make and return the following answers to the following special questions, to-wit:

"Question No. 1: At the time when the defendant was commencing his left turn into the driveway how many feet north of the driveway was the plaintiff's automobile?

"Answer: 50 to 75 feet.

"Question No. 2: What was the speed of the plaintiff's automobile at the time when the defendant was commencing his left turn into the driveway?

"Answer: 40 M. P. H.

"Question No. 3: Do you find that the speed found by you in the preceding question was a contributing cause of the accident and the alleged injuries of the plaintiff?

"Answer: No.

"Question No. 4: Was the plaintiff driving her automobile at a speed which was reasonable and prudent under the conditions existing at the time?

"Answer: Yes.

"Question No. 5: If you find for the plaintiff, then state what act or acts of negligence you find against the defendant?

"Answer: Failure to exercise proper caution in negotiating a left turn under the prevailing weather conditions.

"Date April 5, 1962."

It will be noted that in the answer to Question 1, the jury placed the two cars nearer together than indicated above.

The trial court found and ordered that the verdict should be accepted and discharged the jury.

While the evidence was not too clear as to whether appellant or appellee was negligent, there was no question as to the answers to the special questions and we are going to take the opinion of the trial judge as to the validity of the verdict. See *Henderson v. Kansas Power & Light Co.*, 188 Kan. 283, 362 P. 2d 60.

In arguing the case appellant attempts to assert that the evidence of pain and suffering and disability was conclusive on the jury. We do not so read the evidence.

In the trial the appellant used a Dr. Lovett and did not call the doctor who had taken care of the appellant. In testifying in answer to a hypothetical question, Dr. Lovett said, in answer to a statement of counsel which asked:

". . . do you have an opinion, based on reasonable medical certainty, as to whether there is or could be a causal connection or relationship between that injury and disability, which you found, and the accident in which this lady was involved?

"A. *I think there could be* a causal relation." (Emphasis supplied.)

The doctor further testified that a varicose vein condition developed separately and was not at all involved as an injury received from the accident.

The cross-examination of the doctor continued and we find a question and answer as follows:

"A. Well, I think they could show in one way that she did have a reason for having pain, but I couldn't relate it to the accident, if that is what you mean.

"Q. Anything that might be related to this accident then, doctor.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"A. Nothing.

"Q. So that you found no evidence here, for example, that there was any decrease in the space between two of these vertebrae or two of these

bones which would indicate that this disc material in between the vertebrae was ruptured or that anything had happened to it?

"A. That's right."

While appellant may argue that her evidence was undenied as to her car damage, even that would not prevent the jury from raising some question as to it if they had reason to doubt it. In the case of *In re Estate of Johnson,* 155 Kan. 437, 125 P. 2d 352, at page 439 we find the following discussion. We believe it is apropos to the matter in hand. We quote the following:

"Plaintiff erroneously argues that finding as though a demurrer had been interposed and sustained to her evidence. She claims there was uncontradicted evidence to support her claim and the court was therefore obliged to allow it. The contention cannot be sustained. Assuming there was no evidence which directly contradicted the testimony offered in her behalf, the trial court was not compelled to accept that testimony and to give effect thereto. As the trier of the facts, it was the province and duty of the court to determine what weight and credence it would give to the testimony of the witnesses on both sides of the case. Of course, a jury or court cannot arbitrarily or capriciously refuse to consider the testimony of any witness but, on the other hand, it is not obliged to accept and give effect to evidence which, in its honest opinion, is unreliable, even though such evidence is uncontradicted. (*State, ex rel., v. Woods,* 102 Kan. 499, 170 Pac. 986; *Potts v. McDonald,* 146 Kan. 366, 69 P. 2d 685; *State v. Jones,* 147 Kan. 8, 11, 75 P. 2d 230; *Briney v. Toews,* 150 Kan. 489, 494, 95 P. 2d 355; *Johnson v. Soden,* 152 Kan. 284, 103 P. 2d 812.)"

We might point out that the second cause of action in the appellant's petition was based upon the alleged failure of the appellant to be able to render service to her husband. Appellant asked $5,000.00 based upon the second cause of action. The jury was unable to find any loss to appellant's husband which the jury was able to say occurred because of the automobile wreck here involved.

There was sufficient evidence to support the jury's verdict and it was approved by the trial court and the judgment is affirmed.