(563 P.2d 522)
No. 48,264

Betty Lou Johnson, *Appellant,* v. Lois A. Meade, *Appellee*

Opinion filed April 29, 1977.

*John C. Frank* and *Raymond W. Baker,* of Wichita, for the appellant.
*D. Lee McMaster,* of McMaster & Smith, of Wichita, for appellee.

Before Foth, P.J., Abbott and Parks, JJ.

Abbott, J.: This suit was brought by plaintiff-appellant alleging she was injured in an automobile collision. The trial court directed a verdict for plaintiff on the issue of liability. The jury awarded plaintiff no damages. Judgment for defendant-appellee was entered on the verdict, plaintiff's post-trial motions were overruled, and plaintiff appeals.

On August 4, 1971, the plaintiff, Betty Lou Johnson, was a passenger in a car driven by her daughter, Brenda.

Brenda was taking plaintiff to her doctor's office for a hormone shot. The car was proceeding south and had stopped in response to a traffic light when the accident occurred. Plaintiff's car was the second or third one from the traffic light in the outside lane of traffic. Plaintiff was sitting in the right, front seat, and at the moment of impact she had turned to check on a baby in the back seat. Defendant was also proceeding south in the inside lane, and was in the process of changing lanes when she struck the left rear and left side of the vehicle in which plaintiff was riding. Defendant was subsequently charged with and pled guilty to driving while under the influence of intoxicating liquor or drugs.

Defendant-appellee has not appealed from the trial court's directing a verdict on the question of liability, thus a detailed reassertion of the facts of the accident is not necessary.

Defendant-appellee did contest the alleged injuries from the outset with great vigor, expertise, and success. The controversion of facts begins at the scene. Plaintiff testified she was nervous and upset at the scene, cried, and experienced pain. Her daughter verified her testimony. The investigating officer testified he marked the traffic report as a no-injury accident. He would have paid particular attention to any injuries since the defendant had been drinking. The officer testified there were no injuries reported to him, but he did not talk to plaintiff.

Plaintiff's husband, Joe Johnson, Jr., was called, and he went to the accident scene. Mr. Johnson testified his wife was hysterical, but she did not complain of pain in any part of her body. He further testified that since the accident she had quite a change in mental attitude, cannot do her housework, limps, and is very irritable. On cross-examination, he admitted that prior to the accident his wife complained of headaches, pain in her back which radiated to her legs, dizziness, and occasional fainting spells.

Brenda, plaintiff's daughter, testified her mother can no longer travel, sit for a long time, do her housework, stay up any length of time, becomes upset very easily, walks with a limp, and wobbles. On cross-examination, Brenda admitted she moved away from home seven days after the accident, and that her mother had complained of fainting and blackout spells "once in awhile" prior to the accident. Two neighbors testified that since the accident plaintiff could no longer get around, couldn't do her housework, and wasn't cheerful anymore.

Plaintiff went directly to her doctor's office. The doctor's nurse gave her a hormone shot, and then checked her over. The nurse called Dr. Miller, who had a prescription delivered to her home. Plaintiff readily admitted, "I didn't know whether I was hurt or not. I thought maybe I was just shook up. . . ." She took the medicine, used a heating pad and an analgesic. The following Monday, plaintiff returned to Dr. Miller's office complaining of headaches, pain in the neck and back, and bruises on the left thigh and foot as a result of the accident. She was examined,

medication was prescribed, and X-rays were ordered. Dr. Miller made a diagnosis of "whiplash injury with contusions and abrasions, contusions of the left thigh and of the left foot."

Plaintiff continued to see Dr. Miller on almost a monthly basis and complained of headaches and pain in her back and neck. The X-rays Dr. Miller caused to be taken five days after the accident showed minimal arthritic changes. In November of 1971, plaintiff was hospitalized for bilateral vein ligations. Plaintiff also complained of headaches and back pain. X-rays revealed minimal degenerative changes, including a narrowing of L-5, S-1 interspace. No mention of the accident was made in the hospital records. In November of 1972, plaintiff was admitted for tension headaches and menopausal depression, and she also complained of headaches, dizziness, blurred vision, weakness on left side, shortness of breath, and having "passed out." A neurologist, Dr. Drake, was called in, and it was his opinion that there was no organic cause for her symptoms and that she was normal from a clinical neurological standpoint. No mention of the automobile accident appears in the hospital records and the accident was not mentioned to the neurologist. Dr. Miller testified that the hospitalization in November 1972 was the result of the accident.

In February 1973, plaintiff was again admitted to the hospital and placed in traction. She continued to suffer neck and back pain and was hospitalized on June 14, 1973. An orthopedic surgeon was consulted, and traction and physical therapy were continued. On July 6, 1973, Dr. Duane Murphy, a board-certified orthopedic surgeon, performed a laminectomy and fusion. Plaintiff was again hospitalized for pain and discomfort in November 1973. Both Dr. Miller and Dr. Murphy testified at the time of trial that her condition was permanent and that she would require future medical treatment, including hospitalization. Bills totaling $8,470.02 for medical treatment, hospital care, drugs and medical appliances were introduced into evidence over defendant's objection.

Dr. Miller testified that the injuries which plaintiff received in the accident of August 4, 1971, caused her present condition, and certainly could have aggravated any pre-existing condition. On cross-examination, Dr. Miller noted he had treated plaintiff since 1956, and prior to August 4, 1971, plaintiff had complained of backaches, low back pain that radiated into her legs, headaches,

dizziness, nervousness, loss of sex drive, depression, fainting, hurting all over, tenseness and nausea.

On direct examination, Dr. Murphy testified that in his opinion plaintiff's condition was caused by the accident, but on cross-examination the doctor admitted that he wasn't told by anyone that for eleven years prior to the accident plaintiff had complained of back pain, headaches, and dizziness.

Defendant offered no medical or lay testimony concerning plaintiff's physical condition and relied solely on cross-examination of plaintiff's witnesses to contravene testimony elicited on direct examination.

The trial court instructed the jury in pertinent part:

"The issues of the defendant, Lois A. Meade's negligence and its connection with the accident in question are removed from your consideration. You are instructed that *the defendant, Lois A. Meade was negligent and that her negligence caused plaintiff injury and damage.*

"The only issue remaining for you to decide *is the amount of damages, if any,* that plaintiff is to be awarded for injuries and damages proven by her to have resulted from the accident in question." (Emphasis supplied.)

No objection was made to the instruction by plaintiff at the trial and the instruction is not questioned on appeal. We do note the words "and damage" were added to paragraph one of the above instructions, and the words are shown in PIK Civ. 6.05 as optional, which would lead one to the conclusion the trial judge found as a matter of law plaintiff was entitled to damages. In the very next sentence of the same instruction, however, the trial court altered PIK Civ. 6.05 basically by the use of the words "if any" after the word "damages." The two sentences are in obvious conflict and, at best, are confusing to the jury.

The jury returned a verdict and found "the amount of actual damages to be awarded to plaintiff to be in the amount of $ none."

Appellant raises a single point on appeal, which is that the trial court erred in not granting a new trial on the issue of damages. It is appellant's position that the evidence was uncontradicted that plaintiff was injured, suffered pain, incurred expenses for medical and hospital care and treatment, and that the jury could not return a verdict for plaintiff and find no damages.

The law is well settled that ordinarily the assessment of damages in personal injury cases is exclusively the province of the

jury (*Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321), and the jury is presumed to have acted fairly, reasonably, intelligently, and in harmony with the evidence (*Henderson v. Kansas Power & Light Co.*, 188 Kan. 283, 362 P. 2d 60).

The granting of a new trial generally rests in the sound discretion of the trial court, and its decision will not be disturbed absent a showing of abuse of discretion or other manifest error (*Henderson v. Kansas Power & Light Co.*, supra). A jury, however, may not arbitrarily nor from partiality nor caprice disregard uncontradicted or unimpeached testimony, nor may it disregard the only evidence upon a material question in controversy by returning a verdict in direct opposition thereto (*Lorbeer v. Weatherby*, 190 Kan. 576, 376 P. 2d 926). "In the absence of a statute to the contrary, the general rule is that where a verdict awarding damages is so inadequate as to indicate passion and prejudice on the part of the jury, a new trial should be granted." (*Corman, Administrator v. WEG Dial Telephone, Inc.*, 194 Kan. 783, 402 P. 2d 112, Syl. 1.)

Appellant is faced with a negative verdict as contrasted to an affirmative one. The Kansas Supreme Court considered a negative finding against a plaintiff in *In re Estate of Johnson*, 155 Kan. 437, 125 P. 2d 352, stating:

". . . As the trier of the facts, it was the province and duty of the court to determine what weight and credence it would give to the testimony of the witnesses on both sides of the case. Of course, a jury or court cannot arbitrarily or capriciously refuse to consider the testimony of any witness but, on the other hand, it is not obliged to accept and give effect to evidence which, in its honest opinion, is unreliable, even though such evidence is uncontradicted. (*State, ex. rel., v. Woods*, 102 Kan. 499, 170 Pac. 986; *Potts v. McDonald*, 146 Kan. 366, 69 P. 2d 685; *State v. Jones*, 147 Kan. 8, 11, 75 P. 2d 230; *Briney v. Toews*, 150 Kan. 489, 494, 95 P. 2d 355; *Johnson v. Soden*, 152 Kan. 284, 103 P. 2d 812.)

"Plaintiff contends this court has frequently reversed a trial court on findings of fact where there was no evidence to support the findings made. That is true where there were affirmative findings of fact unsupported by the record. Here, however, we have a negative finding of fact—a very different thing. (*Potts v. McDonald*, supra, p. 369.) Here the court, after hearing all of the evidence, was convinced the claim should not be allowed, and so found. The court quite apparently either did not believe the testimony offered in support of plaintiff's claim or the evidence was not sufficiently clear and convincing to persuade the court concerning the validity of the claim.

"Appellate courts cannot nullify a trial court's disbelief of evidence (*Kallail v. Solomon*, 146 Kan. 599, 602, 72 P. 2d 966), nor can they determine the persuasiveness of testimony which a trial court may have believed. The appearance and

demeanor of a witness, which appellate courts never have the opportunity of observing and which cannot be transmitted to the cold records of this court, may be, and sometimes are, far more persuasive than positive testimony." (pp. 439-440.)

We would have little difficulty affirming the trial court in this case were it not for the fact plaintiff received bruises above and below her left knee in the accident which were not only uncontroverted but acknowledged by defense counsel in his closing argument to the jury. Plaintiff also received prescription drugs from the doctor the day of the accident, had X-rays taken, and obtained additional prescription medicine on the following Monday. Both plaintiff and her doctor testified the initial medicine, the doctor visit and X-rays were a result of the accident. No evidence was introduced in direct contravention, and defendant's cross-examination, even in its broadest form, did not directly controvert the first office visit, X-rays, and prescriptions as being necessitated for any reason other than the accident.

While this court will not weigh the evidence, it may determine that there is or is not sufficient evidence to support the verdict. A review of the record reveals that, other than as stated in the preceding paragraph, the weight and credibility of the appellant's evidence could be questioned by the jury and rejected.

Appellee suggests the trial court instructed the jury that it need not find plaintiff suffered any damages by instructing the jury "[t]he only issue remaining for you to decide is the amount of damages, *if any*, that plaintiff is to be awarded for injuries and damages proven by her to have resulted from the accident in question" (emphasis supplied), and that plaintiff did not object to the instruction. We do not agree with appellee's contention any more than the contention that the preceding sentence in the instruction "that her negligence caused plaintiff *injury and damage*" (emphasis supplied) amounted to a direction to the jury that it must find damages for the plaintiff. The trial judge obviously intended the instructions to allow the jury to determine whether plaintiff's alleged injuries were proximately caused by the accident that defendant was responsible for as a matter of law and, if so, to fix the amount of damages. The jury performed its task, the trial court approved the verdict and entered judgment. We are now called upon to decide whether or not the jury could determine that one is not damaged by receiving bruises, and whether

or not the jury could ignore the uncontroverted evidence concerning the two medical prescriptions, X-rays, and one office visit.

The Supreme Court has ordered a new trial a number of times because of inadequacy of damages. Although factually dissimilar to the present case, of interest are: *Bracken v. Champlin*, 114 Kan. 882, 220 Pac. 1027; *Russell v. Newman*, 116 Kan. 268, 226 Pac. 752; *Burt v. Orr*, 120 Kan. 719, 244 Pac. 1044; *Daniels v. Hansen*, 128 Kan. 251, 276 Pac. 819; *Henderson v. Kansas Power & Light Co.*, supra; *Lorbeer v. Weatherby*, supra; *Levy v. Jabara*, 193 Kan. 595, 396 P. 2d 339; *Timmerman v. Schroeder*, 203 Kan. 397, 454 P. 2d 522.

It is important to note we are not involved with merely nominal damages. Some actual damages were proven in establishing that plaintiff incurred medical expenses as a result of the accident for the office visit, two prescriptions, and X-rays taken on August 9, 1971.

The Wisconsin Supreme Court, in *Schulze v. Kleeber*, 10 Wis. 2d 540, 103 N.W. 2d 560 (1960), granted a new trial after it found a jury's totally negative verdict "perverse" in light of defendant's liability and the fact that plaintiff had sustained at least some bruises and sought medical attention for them.

The Supreme Court of Nebraska reversed a negative jury verdict where undisputed evidence showed plaintiff had suffered severe labor pains, although premature birth was avoided by medical treatment. (*Friesen v. Reimer*, 124 Neb. 620, 247 N.W. 561 [1933]. See, also, *Ambrozi v. Fry*, 158 Neb. 18, 62 N.W. 2d 259 [1954].)

The Texas Court of Civil Appeals granted a new trial when the jury awarded no damages for pain and suffering contrary to all evidence where the jury had been instructed it could award damages for injuries "if any" and pain and suffering "if any." (*Bolen v. Timmons*, 407 S.W. 2d 947 [Tex. Civ. App. 1966].)

New York considered a case wherein liability was admitted and the jury awarded no damages. Defendant had offered no medical testimony and relied on showing slight impact and plaintiff's activities since the accident. The court held "some injury was sustained" and ordered a new trial on the issue of damages only. (*Waldbillig v. Poitras*, 29 App. Div. 2d 595, 285 N.Y.S. 2d 352 [1967]. See, also, 116 A.L.R. 820; and 49 A.L.R. 2d 1301, sec. 5, p. 1331, and cases cited therein.)

"A finding of no damage by the trial court cannot be sustained where the evidence unquestionably shows some damage. . . ." 22 Am. Jur. 2d, *Damages* sec. 399, p. 535.

At first glance, it may seem unfair to grant plaintiff a new trial where she will have a second chance to be awarded damages for medical problems this jury did not believe were proximately caused by the accident. The jury, however, by ignoring the undisputed and unimpeached evidence, has clearly given an indication of partiality, passion, or prejudice by arbitrarily returning a verdict in direct opposition to the evidence. That verdict cannot stand. The trial court abused its discretion in not granting a new trial. The judgment is reversed with direction to grant a new trial on the question of damages only.

Reversed.

Foth, J., dissenting:

I cannot agree that this plaintiff should have a second chance to recover substantial damages simply because the jury failed to award her a little something for two bruises on her leg.

Plaintiff, a passenger, was the innocent victim of a rear end collision. Her evidence, taken at face value, disclosed two separate and distinct injuries. The first was a bruised leg, caused by being thrown against an air conditioner in the car. The second was a whiplash injury to the neck and spine. This latter injury was the claimed cause of low back and leg pain, headaches, dizziness and nausea, eventually requiring a spinal fusion and partial laminectomy and resulting in permanent disability.

The majority is satisfied, as am I, that the jury was justified in finding that plaintiff's serious and permanent ailments were pre-existing and were not aggravated by the collision. This conclusion, to my mind, should end the lawsuit. The concern over the bruises strikes me as an afterthought which should not revive a lawsuit which has been resolved by a jury. Plaintiff sued for $87,000 actual damages, alleging that she had suffered "severe and permanent physical excruciating pain and discomfort." No bruises or contusions are mentioned in the petition. She offered evidence of medical expenses totaling almost $8,500. Her evidence was all directed at showing the seriousness of her back and neck troubles, and that they were the result of the accident.

Defendants efforts went to show that plaintiff's back and neck had bothered her for years before the accident, and that her condition was the product of the natural aging process. The bruised leg was mentioned in the testimony, but only in passing. It is clear from the record that the real issue tried and submitted to the jury was the claim of whiplash.

The issues of negligence and proximate cause were resolved by the instruction quoted in the court's opinion, where it is characterized as being "at best . . . confusing to the jury." In the first sentence the jury was told that defendant's negligence caused plaintiff "injury and damage." In the second it was told that it was to determine "the amount of damages, if any," plaintiff should recover. Defendant, not plaintiff, objected to the first sentence as ignoring evidence that there was no injury at all. Neither party objected to the second sentence, nor is there any claim on appeal that it is erroneous. It therefore represents the law of the case, and is binding on appeal. *Kitchen v. Lasley Co.*, 186 Kan. 24, 28, 348 P. 2d 588; *King v. Consolidated Products Co.*, 159 Kan. 608, 157 P. 2d 541.

In *King* the evidence showed that one party had to be at fault and the other entitled to recover; the issue was which side of the road the two vehicles had collided on. The trial court, however, instructed on contributory negligence, an issue which had been neither pleaded nor proved. The jury returned a verdict of no damages for either party. On appeal the judgment was affirmed. It was noted that the contributory negligence instruction had not been objected to and was not assigned as error, and therefore became the law of the case. The court aptly observed that "the jury was informed it was possible for it to render the precise verdict it did render." (159 Kan. at 610.)

Here, as the majority points out, the trial court modified PIK Civil 6.05 by inserting in the second sentence the words "if any." The clear import, it seems to me, is that damages were not required, and that it was proper for the jury here to "render the precise verdict it did render." Certainly a reasonable juror could not read "damages, if any," to mean "at least some damages." If, as plaintiff claims and the court now holds, the evidence was such as to require an award of damages in at least some amount, the jury should have been so instructed; under the instruction given the jury cannot be faulted for its verdict. It seems to me that

the time for plaintiff to object was when the trial court proposed the instruction authorizing a zero verdict, and not after a verdict was returned in accordance with the instruction.

The reason no objection was made, no doubt, was because the attention of the parties, the court, and the jury, was focused on the validity of plaintiff's claim for serious injuries and substantial damages. That was the hotly contested issue, and a zero verdict on that claim was always a distinct possibility. The instruction was simply tailored to cover the real issue being tried. In my view plaintiff should be bound by the law of the case and a result wholly consistent with it.

But even assuming plaintiff is not bound by the results of the unobjected-to instruction, I do not find the evidence so compelling of an award for the bruises as to require a new trial—a result the majority recognizes "may seem unfair." Even if the bruises had been a serious issue at trial, I cannot believe the law requires compensation for every unjustified bump and bruise, no matter how trivial.

The common law has long incorporated the doctrine of *"de minimis non curat lex"*—the law does not concern itself about trifles. Kansas, so far as my limited research reveals, has only employed the Latin once, and then by way of quotation. (*Westbrook v. Nelson*, 64 Kan. 436, 439, 67 Pac. 884.) The principle, however, is familiar to every Kansas lawyer and is applied in Kansas courts on a regular basis. See, *e.g., Doner v. Deal*, 104 Kan. 793, 180 Pac. 766; *Garvin v. Davison*, 101 Kan. 508, 168 Pac. 318. An offshoot of the doctrine is the widely accepted rule that an appellate court will not reverse a defendant's judgment merely because the plaintiff was entitled to nominal damages. See *Craig v. St. Louis-S. F. Rly. Co.*, 120 Kan. 427, 243 Pac. 1050, and cases cited therein.

Elsewhere the doctrine has been applied to situations conceptually indistinguishable from the case at bar. *Bryant v. Parr*, 86 So. 2d 115 (La. App. 1956) was a rear end collision case. It was found that plaintiff was negligent and the defendant, Mary Lou Parr, was entitled to recover for the damage to her car. In addition she claimed compensation for bruises which raised a "huge bump" on her knee and caused her to need assistance to limp to a drugstore where medication was applied. The court disallowed damages for the injury saying:

"The testimony concerning the injuries of Miss Parr does not convince us that they were sufficiently serious to justify an award. She did not go to a doctor. She merely went to a druggist who put some medicine on it and that seems to have been the end of her suffering. De minimis non curat lex." (86 So. 2d at 119.)

The same result was reached in *Curry v. Fendt,* 94 So. 2d 164 (La. App. 1957), and in *Nicolle v. Roberts,* 117 So. 2d 622 (La. App. 1960). Both were bruise cases where liability was clear; in both recovery was denied under the *de minimis* maxim.

*Sonnier v. United States Casualty Company,* 157 So. 2d 911 (La. App. 1963) was the last of this series of Louisiana cases. There the plaintiff-passenger was denied any recovery for "a mere bump or shaking up resulting from a minor accident caused by a tortfeasor." (*Id.* at 913.) Once again the rule of *de minimis* was applied. On appeal the Louisiana Supreme Court disapproved this reasoning because *de minimis* is a common law concept, while Louisiana is a civil law jurisdiction. *Sonnier v. United States Casualty Company,* 246 La. 401, 165 So. 2d 3 (1964). (The decree of the Court of Appeals in *Sonnier* was nevertheless affirmed on a finding that plaintiff had established neither the serious injuries for which she primarily sought recovery nor any other injury.) Kansas, of course, is a common law jurisdiction, and the doctrine flourishes here.

A case very close to the one at bar is *McUne v. Fuqua,* 45 Wash. 2d 650, 277 P. 2d 324 (1954). There liability for the collision had been established at a first trial, and a new trial had been held on the issue of damages only. Plaintiff's primary claim was for neck and back injuries, shock, and emotional upset. He also suffered a laceration to the head which had required five stitches to close. At the second trial the jury returned a defendant's verdict, and the trial court ordered yet a third trial, in large part because of the failure to compensate plaintiff for the undenied head injury and ensuing medical treatment. The Washington Supreme Court reversed, saying the new trial order was an abuse of discretion. It found first that it was a jury question whether the back and neck injuries primarily claimed were pre-existing or the result of the accident. It went on to say:

"There is no dispute that Mr. McUne suffered a head injury or laceration requiring five sutures, but the evidence is in conflict as to the seriousness of this injury—in fact, as to whether it was inconsequential or not; and the jury apparently concluded, as they had a right to do, that the alleged head injury was

inconsequential. Under the circumstances, an award of nominal damages was not mandatory respecting the head injury." (*Id.* at 653.)

Another nearly identical case is *Hayes v. Hayes*, 357 S. W. 2d 863 (Ky. 1962). There the plaintiff passenger sued her husband-driver and the driver of a taxicab involved in the collision. The jury found her driver was solely responsible for the accident, but returned a zero verdict under an instruction containing the "if any" language. It was undenied that plaintiff had cut her hand slightly and had sprained her ankle. Beyond that, she claimed neck, shoulder and rib bruises, headaches, and nervousness, all developing later. Her doctor and hospital bills amounted to $712.20. The court concluded that causation of her serious injuries was a jury question. As to the cut and sprain the court observed:

"There is no contradiction in the evidence, either positive or inferable, that the plaintiff did suffer some superficial injury in the accident as the result, as the jury found, of the negligence of her husband, the defendant. The jury should have awarded nominal damages. However, we do not reverse a judgment on a failure of the jury to do so." (*Id.* at 866.)

Putting these cases against those cited by the majority, it seems to me the best that can be said is that there is a split of authority on whether a jury is required to award money damages for admitted injuries they deem inconsequential. For my part I prefer to leave it to the jury.

The majority does place some emphasis on one visit to her doctor and plaintiff's receipt of X-rays and medication, which it says were undoubtedly the result of the accident. However, the jury found, and the majority accepts, that the back and neck injuries were not due to the accident. We are therefore only concerned with the bruises when we are looking at medical treatment which might be chargeable to the defendant.

There is no evidence, the majority does not suggest, and if we are to speculate it seems highly improbable, that the medication or X-rays were in any way related to the bruises. They were for her sore back and neck, a condition which has been found to be unrelated to the accident. Once again, I cannot see why the jury was required to see that she was reimbursed for those expenses.

In summary, my position is: Plaintiff had a full opportunity to prove her primary claim of severe and permanent injury and she failed. As to her superficial injuries, the jury was told without

objection that they did not have to compensate her for them if, in its wisdom, it found them to be noncompensable. She should be bound by the verdict rendered accordingly. And finally, even if a small sum should have been awarded (and the jury should have been so instructed), under the doctrine of *de minimis non curat lex* the case should not be reversed for a new trial at which plaintiff will have a second chance, before a second jury, to relitigate not only the trivial injuries but the cause of her serious ailments. I would affirm.